IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. LYNNTOYA WASHINGTON and MICHAEL T. MAHONEY et al. | ) ) ) ) ) |  |
| Plaintiffs, | ) ) | Civil Action No. 07-CV-0461 |
| v. | ) ) |  |
| EDUCATION MANAGEMENT CORP., et al | ) ) |  |
| Defendants, | ) |  |

REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE OF THE
COMMONWEALTH OF  KENTUCKY, EX. REL. JACK CONWAY,
ATTORNEY GENERAL

Comes Jack Conway, in his capacity as Attorney General of the Commonwealth of

Kentucky (the "Kentucky Attorney General"), and for his reply to the Defendants' response in

opposition to his motion to intervene, states as follows:

## I.    INTRODUCTION

The Defendants (collectively "EDMC") have made several arguments unsupported by

law, precedent or evidence of legislative intent as to why the Court should deny the Kentucky

Attorney General's motion to intervene.  Since the motion is authorized by 31 U.S.C. § 3732(b)

and EDMC has failed to raise any legitimate objection, the Court should grant the motion to

intervene as authorized by 31 U.S.C. § 3732(b) and allow the Kentucky Attorney General to seek

recovery of funds paid to EDMC by the Kentucky Higher Education Assistance Authority

("KHEAA").

## II.   ARGUMENT

### A.   Congress did not intend to limit the district courts' jurisdiction over state claims to those brought pursuant to state false claim acts.

31 U.S.C. § 3732(b) expressly states, "Claims Under State Law.  The district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730."  Nothing in 31 U.S.C. § 3732(b) suggests that the district courts only have jurisdiction over state claims brought pursuant to state false claim acts.[1]

EDMC has failed to cite evidence from the Congressional record that Congress intended to limit the district courts' jurisdiction to actions brought pursuant to false claim acts, rather than "any action brought under the laws of any State" as stated in 31 U.S.C. § 3732(b).  In fact the legislative history of § 3732(b) suggests that Congress intended the provision to enhance the options of the states.  The National Association of Attorneys General was instrumental in lobbying for § 3732(b) as part of the 1986 Amendments to the False Claims Act.  As the Senate Report accompanying the 1986 Amendments explains: "And finally, in response to comments from the National Association of Attorneys General, the subcommittee adopted a provision allowing State and local governments to join State law actions with False Claims Act actions brought in Federal district court if such actions grow out of the same transaction or occurrence."  *S.Rep. No. 99-345,* at 16 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5281.

In a case directly on point, Louisiana moved to intervene in a *qui tam* action to recover excess Medicaid expenditures, asserting claims pursuant to Louisiana's consumer protection law

---

[1] In its Brief, EDMC failed to engage in any meaningful discussion of the intent of § 3732(b) or its language.

and laws on fraud and unjust enrichment, among others, but not under a state false claim law.

*United States v. Merck & Co., Inc.,* 2004 WL 595074 (E.D.La. 2004).  Merck argued the False

Claims Act prohibited Louisiana from intervening.  The Court held Louisiana should be allowed

to intervene pursuant to § 3732(b), stating:

> The Court is not aware of any case law, and none has been cited by Merck, that
> indicates States cannot be allowed to intervene in these types of actions for those
> very narrow purposes, to assert state law claims.  Further, it would serve judicial
> economy to finalize the matter, if possible, in one action as opposed to requiring
> the State to file a separate action in this Court based on the same facts.

> *Id.* at 8.

California, Illinois and Indiana are also acting in accordance with the plain language of 31

U.S.C. § 3732(b) and are not limiting their claims to only those pursuant to their False Claim

Acts.  In the Joint Complaint, California, Illinois and Indiana have all brought claims against

EDMC for unjust enrichment, Illinois has brought a claim for payment by mistake in fact, and

Indiana has brought a claim for common law fraud, in addition to their False Claim Act counts.

The Kentucky Attorney General has brought claims based on the Kentucky Consumer Protection

Act, payment by mistake and unjust enrichment.

All of these claims under different legal theories have in common the only elements 31

U.S.C. § 3732(b) requires them to have in common.  The Kentucky Attorney General, just like

California, Illinois and Indiana, is (1) bringing an action under state law to recover funds paid by

the state to EDMC which (2) arises from the same transaction or occurrence as an action brought

under section 3730.  The United States' action seeks in part the recovery of federal funds paid for

students enrolled in EDMC institutions in California, Illinois, Indiana and Kentucky[2], as well as EDMC institutions elsewhere, and all of these claims have in common the same occurrence, EDMC's false representation in its PPAs that it was in compliance with the incentive compensation ban, without which EDMC could not have obtained either state or federal funds for the students enrolled in its institutions.  Since the Kentucky Attorney General's claims meet the requirements of 31 U.S.C. § 3732(b), and there is no requirement that the state claims be based on state false claim acts, the Court should grant the Kentucky Attorney General's motion to intervene.

> **B.** **The Kentucky Consumer Protection Act allows the Kentucky Attorney General to bring actions to recover funds paid by Kentucky and public corporations.**

EDMC has attempted to create a question as to whether or not the Kentucky Attorney General can bring an action pursuant to the Kentucky Consumer Protection Act ("KCPA") to recover funds paid to EDMC by KHEAA.  Its argument is based on absurd interpretations of the language of KRS Chapter 367 and its false assertion that there is no precedent allowing the Kentucky Attorney General to bring such a claim.  Since there is precedent to the contrary, and Kentucky law provides that its statutes are to be interpreted in accordance with their plain meaning, are to be liberally construed and are not to be interpreted in a way which brings about an absurd result, there is no real controversy as to whether or not the Kentucky Attorney General can bring a KCPA claim to recover state funds.

KRS § 446.080 provides in part that "[a]ll statutes of this state shall be liberally construed

---

[2] The EDMC Institutions located in Kentucky are Brown Mackie College–Louisville, Brown Mackie College–Hopkinsville, and Brown Mackie College–Northern Kentucky, all identified as defendants in the caption of the Second Amended Complaint.

with a view to promote their objects and carry out the intent of the legislature," and that "[a]ll words and phrases shall be construed according to the common and approved usage of language". Kentucky courts have also repeatedly held that statutes must not be interpreted so as to bring about absurd or unreasonable results. *Renaker v. Commonwealth,* 889 S.W.2d 819, 820 (Ky.App. 1994). In light of these requirements, the KCPA authorizes the Kentucky Attorney General to bring actions to recover public funds in appropriate cases.

KRS § 367.200 authorizes the Court to restore to "persons in interest" money paid out as a result of unlawful practices, not merely to individual consumers as EDMC falsely asserted in its brief. KRS § 367.110 defines "person" as "natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity." Not only is the Commonwealth of Kentucky obviously a "legal entity"[3], KRS § 167.742 established KHEAA as "a body corporate and politic constituting a public corporation and governmental agency and instrumentality of the Commonwealth". KHEAA meets the definition of "person" in KRS § 367.110 since it is a corporation, and it is a "person in interest" pursuant to KRS § 367.200 since, as the Kentucky Attorney General alleged in his Complaint, KHEAA entered into Administrative Agreements with the Brown Mackie Colleges located in Kentucky to pay them grant money for students enrolled with them. Even if EDMC had argued that a public corporation is not a corporation, an absurdity, it would be even more absurd to argue that KHEAA is not a legal entity because a public corporation is not like a corporation. If KHEAA, a public corporation, is

---

[3] EDMC relies on *Commonwealth v. Aubrey,* 2010 WL 4668976 (Ky.App. 2010) to argue that Kentucky is not a "person". That decision is under discretionary review by the Kentucky Supreme Court, 2010-SC-000809, and it involves a different definition of "person", that in the Kentucky Declaratory Judgment Act, and whether the Kentucky legislature intended to waive Sovereign Immunity, an issue not present in this case.

not a legal entity, then what did EDMC entered into administrative agreements with, a figment of its imagination?

The money EDMC received from KHEAA is certainly real, and the plain language of the KCPA supports a liberal construction of KCPA to allow recovery of that money if it was obtained unlawfully.  KRS § 367.170 declares that false acts and practices are unlawful, and KRS § 367.200 provides for recovery of money for "persons in interest" obtained by such unlawful means.  It makes no sense to prevent the recovery of public money obtained unlawfully.  EDMC's interpretation of the KCPA would allow no recourse under the KCPA for false acts and practices committed against all the people of the Commonwealth of Kentucky resulting in the loss of public money.  Since Kentucky law requires courts to liberally construe Kentucky statutes to carry out the legislature's intent, and the legislature intended the Kentucky Attorney General to recover money unlawfully obtained, the Kentucky Attorney General can bring an action to recover money obtained unlawfully from Kentucky or any type of corporation whether that corporation is public or private.[4]

Case law also supports the Kentucky Attorney General's right to seek recovery of public money pursuant to the KCPA.  In *United States v. Merck & Co., Inc.*, *supra,* Louisiana was allowed to intervene in a *qui tam* action to seek recovery of excess Medicaid reimbursements under its state consumer protection law, and state laws on fraud and unjust enrichment. In *FTC v. Mylan Labs,* 62 F.Supp.2d 25, 32-33 (D.D.C. 1999) Kentucky brought claims to recover money

---

[4] EDMC also makes the argument that payment of incentive compensation has not been declared unlawful under the KCPA.  But false acts or practices have, and Kentucky's Complaint alleges that EDMC falsely asserted that it did not pay incentive compensation, a condition for EDMC to qualify for receipt of KHEAA student financial aid grants.

reimbursed under the state Medicare program.  Having initially dismissed the claim, the District

Court reconsidered and held that under the KCPA, the Kentucky Attorney General could bring

the claim, *FTC v. Mylan Labs,* 99 F.Supp.2d 1, 6 (D.D.C. 1999).  In addition, Mississippi

brought an action pursuant to the Mississippi Consumer Protection Act to recover illegal

overcharges for software purchased by Mississippi, *Hood ex rel. Mississippi v. Microsoft Corp.,*

428 F.Supp.2d 537, 540 (S.D.Ms. 2006).  The Mississippi Consumer Protection Act uses the

identical definition of "person" in Miss. Code Ann. § 75-24-3 as Kentucky uses in KRS §

367.110, and its provision allowing recovery of unlawfully acquired money, Miss. Code Ann. §

75-24-11 is virtually identical to KRS § 367.200.[5]

Thus the Kentucky Attorney General's authority to seek recovery of money obtained

unlawfully by EDMC from KHEAA is not a novel or complex issue which has to be resolved by

Kentucky state courts.  EDMC's strained interpretation of the KCPA would lead to absurd results

and thwart the intent of the Kentucky legislature.  Louisiana, Kentucky and Mississippi have

brought state claims under their Consumer Protection Acts in other federal courts.  Furthermore,

even if the Court believes there is some question about the Kentucky Attorney General's

authority to bring this action pursuant to the KCPA, EDMC has not raised any objection to the

Kentucky Attorney General's claims based on payment by mistake and unjust enrichment, which

have also been brought by the other intervening states.  Therefore the Court should grant the

Kentucky Attorney General's motion to intervene.

---

[5] The Kentucky Attorney General's right to bring a KCPA action on behalf of the
Commonwealth has also been recognized by the Franklin County, Kentucky Circuit Court in
*Commonwealth ex. rel. Conway v. Alpharma USPD, Inc.,* No. 04-CI-1487, pp. 10-11 (2011)
(Order attached as Exhibit 1).

**C.     The Kentucky Attorney General's claim will not disrupt or unduly delay the pending claims.**

The Kentucky Attorney General's motion to intervene will not cause any significant delay or disruption to this litigation and the Court should grant the motion.[6]  First, as previously discussed, each of the intervenors have asserted one or more legal theories other than their False Claim Acts as grounds for recovery from EDMC.  EDMC has failed to raise any legitimate reason why a KCPA claim will add significant burdens when the other intervenors have counts based on four different legal theories.  Second, EDMC's claim that Kentucky's claims involve different schools not currently involved is false.  Brown Mackie College–Louisville, Brown Mackie College–Hopkinsville, and Brown Mackie College–Northern Kentucky were all named parties in the caption of the Second Amended Complaint before the Kentucky Attorney General filed his motion to intervene.  The United States is seeking recovery of federal money paid to EDMC for students enrolled at the three Brown Mackie Colleges located in Kentucky, and will use the same evidence that the Kentucky Attorney General would use to establish the United States' right to recover its funds whether the Kentucky Attorney General is a party to this case or not.  Both the Kentucky Attorney General's and the United States' claims are based on the same occurrence: EDMC's false assertion in its PPAs that it was not paying incentive compensation, and both the Kentucky Attorney General and the United States will have to use the same evidence to prove that EDMC's assertions were false.  The Kentucky Attorney General will have to introduce separate evidence to establish how much money KHEAA paid to EDMC, but that is true for the other intervening states as well, and this is not a particularly great evidentiary burden

---

[6] EDMC implicitly acknowledges the Kentucky Attorney General's right to intervene pursuant to FRCP 24 by failing to make any argument pursuant to it.

since KHEAA routinely documents the grant payments it makes for students enrolled in

Kentucky colleges.  Conversely, it will unnecessarily burden the Kentucky Attorney General and

judicial resources to require him to file a separate action to litigate concerning the same

occurrences as are being litigated in this action.  Since the Kentucky Attorney General's claims

will not disrupt or delay this litigation, his motion to intervene should be granted.

## III. CONCLUSION

For the foregoing reasons, the Commonwealth of Kentucky, ex. rel. Jack Conway,

Attorney General, requests that the Court GRANT his motion to intervene.

Respectfully submitted,

JACK CONWAY
ATTORNEY GENERAL OF THE
COMMONWEALTH OF KENTUCKY

/s/ Stuart W. Cobb
STUART W. COBB
Assistant Attorney General
Office of the Attorney General
1024 Capital Center Drive
Frankfort, Ky 40601
(502) 696-5442
Stuart.cobb@ag.ky.gov

Dated: September 13, 2011

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of September, 2011, a copy of the forgoing Reply was filed
electronically.  Notice of this filing will be sent to counsel of record via the Court's CM/ECF
system.  Parties may access this filing through the Court's system.

s/ Stuart W. Cobb
Stuart W. Cobb
Assistant Attorney General

9