IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA et al, <br> Plaintiffs, <br><br> v. <br><br> EDUCATION MANAGEMENT LLC et al, <br> Defendants. | ) <br> ) <br> ) <br> ) 2:07-cv-461 <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION #2 OF THE SPECIAL MASTER REGARDING PLAINTIFFS' MOTIONS TO COMPEL (ECF No. 263); DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION #3 OF THE SPECIAL MASTER REGARDING DEFENDANTS' MOTIONS TO COMPEL (ECF No. 264); and PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 3 CONCERNING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF MATERIAL AND RESPONSES TO DISCOVERY REQUESTS (ECF No. 269).

Factual and Procedural Background

The Honorable Richard A. Levie (Ret.), was appointed by the Court as Special Master on November 8, 2012. The Special Master and the parties engaged in extensive efforts to resolve and narrow the discovery disputes at issue, including the filing of numerous Motions to Compel[1]; thorough briefing, oppositions and replies regarding said motions; additional briefing at the Special Master's request on the "contention interrogatory" issue; and oral argument. On May 14,

---

[1] The Motions to Compel were filed directly with the Special Master, rather than on the Court's CM/ECF system. Copies of the motions have been provided to the Court.

2013, the Special Master filed a 51-page Report and Recommendation ("R&R") No. 2 (ECF No. 258) and a 45-page R&R No. 3 (ECF No. 259). Attached to each R&R is a proposed order which the Special Master recommends be entered by the Court. The parties have engaged in extensive briefing and have submitted numerous exhibits in support of their respective positions. The Objections are ripe for disposition.

The Court also notes recent procedural developments in *United States ex rel Sobek v. EDMC*, Civil Action No. 10-131, a related qui tam, False Claims Act ("FCA") action against certain EDMC-affiliated entities, which is assigned to United States Magistrate Judge Cynthia Eddy for pretrial proceedings. In *Sobek*, the relator alleges that EDMC presented false and fraudulent claims for student aid funding because EDMC knew that it was not in compliance with applicable regulations and its Program Participant Agreement ("PPA"), as to the accreditation of certain nursing programs (Count I), job placement statistics (Count II) and student academic progress ("SAP") (Count IV), and thus, was not eligible to receive student aid funding.[2] EDMC filed a Motion to Dismiss the case in its entirety, with prejudice. Magistrate Judge Eddy issued an R&R in which she recommended that the Motion to Dismiss be granted in part and denied in part. On May 31, 2013, the Court issued a Memorandum Opinion and Order which overruled EDMC's objections; adopted Magistrate Judge Eddy's R&R as the opinion of the Court; and required EDMC to file an Answer as to Counts I, II and IV of the Second Amended Complaint on or before June 14, 2013. As relevant to the pending Objections in this case, discovery will commence in the very near future in *Sobek*, and will encompass allegations regarding accreditation, job placement statistics and SAP.

---

[2] *Sobek* also alleged a violation of the Incentive Compensation Ban ("ICB") in Count V, but the parties agreed that it should be dismissed under the "first-filed rule" due to this case, Civil Action No. 07-461.

Discussion

The Court is acutely aware of its duty to conduct a *de novo* review of the Special Master's R&Rs pursuant to Fed. R. Civ. P. 53(f). In particular, the Court recognizes the vast scope of the discovery that has been requested by both sides, and the ensuing burden, time and expense that such discovery will entail. The Court has thoroughly analysed the R&R's; and the Objections, responses in opposition, replies, surreplies and attached exhibits. Upon consideration and reflection, the Court will accept the recommendations of Special Master Levie.

    A. R&R No. 2 (Plaintiffs' Motions to Compel Discovery)

EDMC does not raise particularized objections to Special Master Levie's rulings on Plaintiffs' specific discovery requests. Instead, EDMC presents overarching challenges to the methodology used by the Special Master; suggests that the Court provide guidance on the threshold legal issues which govern the scope of discovery; and seeks a remand to the Special Master for application of that guidance to the outstanding issues. Specifically, EDMC contends that the Special Master failed to undertake the "good cause" analysis required by the 2000 Amendment of Fed. R. Civ. P. 26(b)(1); misapplied the "proportionality" analysis required by Fed. R. Civ. P. 26(b)(2)(C); and would improperly permit an overbroad and open-ended investigation of EDMC's compliance with regulations not at issue in this case. Plaintiffs do not object to R&R No. 2.

In 2000, Rule 26 was amended to reduce the scope of discovery.[3] Pursuant to Rule 26(b)(1) (Scope in General), parties are generally authorized to obtain what EDMC refers to as "core discovery" on matters relevant to "any party's claim or defense." However, before

---

[3] Significant proposed changes to the scope of discovery are again under consideration. *See* Report of the Advisory Committee on Civil Rules, May 8, 2013.

3

engaging in broader discovery on matters relevant to the "subject matter" of the case, a party must obtain a Court order upon a demonstration of "good cause." EDMC contends that Rule 26(b)(1) requires this "two-tier" process as to scope, and then a distinct consideration of the factors set forth in Rule 26(b)(2)(C) (Limitations on Frequency and Extent) by which a court may limit discovery, as explained in *In re Cooper Tire & Rubber Co*., 568 F.3d 1180, 1188-89 (10th Cir. 2009) and *Robinson v. Hartford Ins. Co*., 2004 WL 1090991 (E.D. Pa. 2004). Instead, the Special Master intertwined the "scope" and "limitations" issues under Rule 26(b)(1) and (b)(2)(C).

The Court need not define the philosophical contours of Rule 26 in order to resolve EDMC's Objections in this case. As EDMC recognizes, the United States Court of Appeals for the Third Circuit has not provided specific guidance as to application of the 2000 Amendment, and the management of discovery is typically left to the practical discretion of the district court. Although he declined to adopt the two-tier approach, Special Master Levie accurately quoted Rule 26 and recognized that the 2000 Amendment "does contemplate some increased limitation on scope." R&R at 10. The Special Master also cited to the applicable Advisory Committee commentary on the 2000 Amendment, which confirms that the Court "retains authority to order discovery of any matter relevant to the subject matter involved in the action for good cause" and explains that the "amendment is designed to involve the court more actively in regulating the breadth of sweeping or contentious discovery." The Court, and the Special Master, have been very active in regulating the breadth of discovery in this case, as contemplated by the Advisory Committee. Moreover, the 2000 Advisory Committee notes provide that the "good-cause standard warranting broader discovery is meant to be flexible" and vests the trial judge with broad discretion to tailor discovery. The scope of discovery should be determined by the

4

"reasonable needs of an action," considering the circumstances and the nature of the claims and defenses. *See In re Cooper Tire*, 568 F.3d at 1188.

The scope of the "core discovery" authorized by Rule 26(b)(1) in this case is broader than that conceded by EDMC. This is a massive and complex case, in which Plaintiffs are seeking to prove a multi-billion dollar, top-down, corporate-wide fraud. Plaintiffs must "prove a negative" – i.e., that EDMC did not implement the ADA compensation plan as written. Plaintiffs have alleged that EDMC's written plan is a sham or coverup to conceal its actual ADA compensation practices. The direct evidence of this alleged fraud could only be possessed by a select number of top EDMC executives. Additionally, Plaintiffs are also entitled to an opportunity to prove their case through circumstantial evidence. The scope of discovery into these allegations must necessarily be expansive. Moreover, the "core discovery" authorized by Rule 26(b)(1) may relate to either "claims" or "defenses." Although Plaintiffs have arguably alleged only a single "claim"[4] relating to the ICB, EDMC has pled a multitude of defenses, *see, e.g.,* ECF No. 186 (asserting 31 affirmative defenses), and much of the discovery at issue is relevant to one or more of these defenses. In any event, even if some of the contested discovery is unrelated to "claims and defenses," the Court finds and concludes that the scope of discovery as determined by the Special Master satisfies the "good cause" standard in Rule 26(b)(1).

EDMC also contends that the Special Master misapplied the "proportionality rule" of Rule 26(b)(2)(C). The Court has reviewed the Affidavits of Larry Trenga, Vice President of IT Operations for EDMC, and Attorney Laura A. Meaden[5], and is aware of the vast numbers of enrolled students, prospective students, employees, and document repository locations which are

---

[4] The Complaints actually set forth numerous causes of action based on federal and state law.
[5] Plaintiffs represent that Ms. Meaden's affidavit was not provided to the Special Master by EDMC. This was improper, for the reasons set forth in *Morris v. Amalgamated Lithographers of America, Local One,* 994 F. Supp. 161, 163 (S.D.N.Y. 1998). The parties are now on notice that, in ruling on Objections to an R&R, this Court will NOT consider any information that was not provided to the Special Master, without a demonstration of good cause.

5

encompassed by the discovery requests. The Special Master was also cognizant of those facts and, as EDMC recognizes, he engaged in a thorough Rule 26(b)(2)(C) analysis. Discovery in this case will undoubtedly present a Herculean task. But in evaluating the burden and expense of discovery, the Court must consider it in the context of an amount in controversy of billions of dollars; that the government and EDMC both possess significant resources; and that the issues are of surpassing importance, particularly to EDMC. The Court urges counsel to work closely and cooperatively throughout the discovery process to refine and streamline the specific searches and document productions, and to minimize and/or eliminate areas in which the burden outweighs the benefit. All parties have agreed that discovery will proceed on a "rolling basis" and the Court instructs the parties to use the knowledge gained in the initial phases to make the ongoing process more effective. However, the Court is not convinced by the overarching, conceptual challenges raised in EDMC's Objections to R&R No. 2.

EDMC objects to Special Master Levie's characterization of the key issue as "whether the Quality Points accurately reflected ADA performance" and continues to portray the key issue as "whether compensation was based solely on enrollments." These are different sides of the same coin. As noted above, Plaintiffs are entitled to prove their allegations that the ADA Compensation Plan was a sham through circumstantial evidence that the non-enrollment factors on the Grid (i.e., the Quality Points) were not actually of significance. Such evidence could allow a jury to conclude that ADA compensation was based solely on enrollments.

EDMC contends that its focus on maximizing enrollments, in accordance with the Safe Harbor, is not probative of fraudulent intent. While the Court does not disagree with this contention, Plaintiffs are entitled to take discovery in order to prove their allegation that EDMC did <u>not</u> comply with the Safe Harbor. Similarly, EDMC contends that evidence regarding

recruiter conduct and student academic performance is not probative based on the Declaration of Dr. Lazear that such data is not statistically reliable. The Special Master actually agreed with EDMC that RFP 127 (student performance data) was overbroad. The Court adheres to its earlier statements regarding the limitations of statistical evidence at this stage of the case.

EDMC contends that the Special Master ignored this Court's holding regarding the President's Club and other non-cash compensation. The Court does not agree. The Special Master correctly perceived that the Court held that Plaintiffs had failed to establish a claim regarding the President's Club "as written." R&R at 48-49. The Court did not foreclose the theory that non-cash compensation was used, in actuality, as a mechanism to compensate ADA's solely on enrollments.

EDMC challenges all discovery that is not directly related to the ICB, and suggests that the government is launching a fishing expedition into its compliance with all regulations. The Court is not convinced. The discovery scope defined by the Special Master is limited to verification of compliance with the PPA and eligibility to receive student aid funding, such that EDMC was not submitting false claims. In particular, evidence regarding how the supervisors of ADA's were compensated may be persuasive as to whether those supervisors were incentivized to apply the Quality Factors for ADA compensation. Moreover, the Special Master has articulated persuasive reasons for his proposed relevance determinations.

The Court notes that the Special Master recommends real limitations on the discovery sought by Plaintiffs, including RFP Nos. 45 (other PPA documents); 64-65 (ADA terminations not based on enrollment/quality); 102-03, 105-08, 115-16 and 127, (recruiter – student performance); and 133-34 (student withdrawals). Most significantly, the Special Master recommends denial of discovery regarding each of the 900,000 enrolled students and 13.7

7

million prospective students. In sum, the Special Master applied a pragmatic and reasonable approach to determining the permissible scope of discovery (i.e., he has "threaded the needle") which fully comports with Rule 26.

Although the Court agrees with the Special Master as to the "scope" of discovery, there may be opportunities to implement the sequencing of that discovery more efficiently, in light of the recent ruling in *Sobek*. Special Master Levie has not been involved in the *Sobek* case, and the ruling on the Motion to Dismiss in *Sobek* was made after Special Master Levie issued R&R Nos. 2 and 3 in this case. Nevertheless, it is now apparent that discovery regarding accreditation, job placement statistics and SAP in the two cases will overlap and perhaps should be coordinated. Until such coordination occurs, it may be preferable for the initial phase of discovery responses in this case to focus on the ICB. The Court will leave the initial decisions as to sequencing and coordination of discovery to the parties and the Special Master, subject to its de novo review.

In accordance with the foregoing, the Objections to R&R No. 2 will be **OVERRULED**.[6]

B. R&R No. 3 (EDMC's Motions to Compel Discovery)

Both parties have filed Objections to R&R No. 3. EDMC contends that the Special Master improperly narrowed the scope of discovery on RFP Nos. 40, 75, 76 and 87. EDMC also argues that Interrogatories 3, 4, 6, 31-33, 41 and 42 are not "contention interrogatories." Plaintiffs contend that EDMC should be foreclosed from seeking to access attorney files; that knowledge cannot be imputed from government attorneys to the Department of Education ("DOE") and parallel state agencies; that only EDMC's scienter is relevant; and that the

---

[6] EDMC seeks a hearing in this Court, but in light of the extensive proceedings with the Special Master, the Court finds that such hearing is not warranted.

"condition of payment" requirement can be resolved as a matter of law. The Court will address these contentions seriatim.

1. Enforcement Actions in Other Cases

In RFP Nos. 40 and 87, EDMC sought discovery of "all documents" related to qui tam lawsuits in *United States ex rel Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006) and *United States ex rel Buchanan v. South Univ. Online and EDMC*, Civil Action No. 07-971 (W.D. Pa.), respectively. EDMC contends that the government's past enforcement practices are relevant to materiality and "condition of payment." As to *Buchanan*, EDMC contends that the Special Master found that all prior investigations of EDMC were discoverable (pursuant to RFP 22). EDMC points out that the *Hendow* case was cited numerous times in the Complaints and that ICB compliance is authorized by RFP 55. Plaintiffs, in response, note that RFP Nos. 87 and 40 largely overlap with RFP Nos. 22 and 55. Plaintiffs contend that the Special Master permitted discovery of the relevant documents, and curtailed only the exceptionally broad request for "all documents" in RFP Nos. 87 and 40.

The Special Master recommends that RFP Nos. 87 and 40 be limited to "documents relating to the government's decision to pursue legal action on the basis of ICB non-compliance and to intervene in these specific cases." R&R at 28. The Special Master explained that only such information will reflect on the government's application of the ICB. The Court agrees with the line drawn by the Special Master, with the understanding that documents relating to the government's decision to <u>not</u> intervene in *Buchanan* would also be responsive.

2. GAO Documents

In RFP Nos. 75 and 76, EDMC sought information possessed by the Government Accounting Office ("GAO"), and noted that in 2010, the GAO had audited DOE's enforcement of the ICB. The Special Master recommends limiting RFP No. 75 to communications between GAO and the Department of Justice ("DOJ") or DOE and recommends denial of RFP No. 76. EDMC seeks full responses.

The Special Master reasoned that no agencies other than DOJ and DOE were involved in enforcement of the ICB, and thus, documents the GAO may have obtained from other sources were not likely to be relevant. The Court agrees with the Special Master. The views of "associations representing various school sectors and students" and "selected" auditors that were gathered by the GAO would not be binding on the government or EDMC and would not shed light on the materiality or "condition of payment" inquiries. It is sufficient that EDMC will be entitled to discover documents that the GAO obtained from DOE and/or DOJ.

3. Contention Interrogatories

EDMC contends that it has narrowed its interrogatories and now seeks only documents, witnesses and "facts obtained to date from those witnesses that are not captured in a document being disclosed." In addition, EDMC argues that if Plaintiffs "lack facts, that too should be revealed." Exh. 8 at 3. EDMC also contends that even if its request for "facts" is premature, at a minimum Plaintiffs should be required to identify documents and witnesses, *citing B. Braun Medical Inc. v. Abbott Labs*, 155 F.R.D. 525, 527 n.1 (E.D. Pa. 1994).

This topic has been the subject of repeated discussion by the parties and Special Master. The Special Master set forth a thorough analysis in the R&R of the governing legal principles

and each interrogatory at issue. The Court agrees with the Special Master that it is premature to require Plaintiffs to identify "facts" that they possess (or do not possess). Even if "facts" not otherwise reflected in a document are "rare," as EDMC contends, the burden on Plaintiffs to identify such facts, and to supplement their responses as more facts are obtained in discovery, would be excessive. The Court agrees with the reasoning of the Special Master.

The Court also agrees with the Special Master regarding documents and witnesses. The Special Master recognized that identification of documents and witnesses may be sought while discovery is in its infancy. R&R at 34. He recommended denial because the actual text of the interrogatories seeks "all evidence" and Plaintiffs are not yet in possession of Defendants' documents. Thus, he reasoned, it is highly likely that Plaintiffs would be required to supplement their responses at that time. R&R at 42. The Court is confident that the Special Master will require Plaintiffs to identify the documents and witnesses requested in these interrogatories at an expedient time.

### 4. Attorney Files/Privilege Log/Government Knowledge

Plaintiffs forcefully contend that EDMC is improperly attempting to access the confidential writings and reasoning of opposing counsel. The Court certainly recognizes and appreciates this concern and will be vigilant to uphold all applicable privileges and work product protections. However, rather than preparing a privilege log, Plaintiffs ask the Court to prevent such discovery categorically and preemptively. Plaintiffs reason that attorney files cannot support any of the common law claims or defenses and that knowledge cannot be imputed from government attorneys to the regulating agencies. Plaintiffs also contend that the knowledge of

the governments is not relevant, because the FCA scienter element tests only the intent of EDMC.

The Special Master explained repeatedly that he would not rule in advance on assertions of privilege or work product protection. *See, e.g.*, R&R at 2 n.2 and R&R at 26 n. 10; R&R at 33. The Special Master further explained, at length, that discovery motions were not the proper vehicle for resolution of complex legal issues which present mixed questions of law and fact, citing *Doe v. Abington Friends School*, 480 F.3d 252 (3d Cir. 2007), and this Court's decision in *Sandvik Intellectual Property AB v. Kennametal Inc.*, 2012 WL 4378205 (W.D. Pa. 2012). *See* R&R at 8-10. The Court agrees with the Special Master.

The burden to establish a claim of privilege is on the party asserting the privilege. *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012). Plaintiffs will have ample opportunity to do so, but a privilege log is necessary to enable the opposing party (and the Court) to test the propriety of that assertion. *Velocity Intern., Inc. v. Celerity Healthcare Solutions, Inc.*, 2010 WL 2196423 *4 (W.D. Pa. 2010). Plaintiffs have filed serious charges against EDMC in this case and will subject EDMC to tremendous burdens in discovery. In that light, their concerns with the burden of preparing a privilege log ring hollow. If Plaintiffs intend to assert a privilege, they must do so pursuant to Fed. R. Civ. P. 26(b)(5). At this stage of the case, the Court agrees with the Special Master that Plaintiffs must respond to the disputed RFPs.

Plaintiffs seek to preempt discovery based on complex issues regarding "government knowledge." The Court is inclined to agree with Plaintiffs that the mere continuation of student loan funding to EDMC students during the pendency of this case would not constitute governmental acceptance of EDMC's alleged conduct because, inter alia, EDMC has denied the allegations in the Complaints; the ADA Compensation Plan "as written" appears to comply with

the regulations; and discovery is just now commencing into the Plan "as implemented." On the other hand, if the government regulators knew that the Plan "as implemented" violated the ICB and nevertheless continued student loan funding, a different outcome might be warranted. *See United States ex rel Wilkins v. United Health Group*, 659 F.3d 295, 307-09 (3d Cir. 2011) ("*Wilkins*"). The Court expresses no opinion on the merits of the parties' respective positions, other than to conclude that the arguments regarding government knowledge may present mixed questions of law and facts which are better resolved on a more fully-developed record.

5. Condition of Payment

Finally, Plaintiffs contend that the "condition of payment" requirement can be determined as a matter of law, and thus, no discovery is necessary. The Court does not agree. In *Wilkins*, the Court of Appeals held that an alleged violation of the Anti-Kickback Statute ("AKS") survived a motion to dismiss. The *Wilkins* Court further recognized that a party could introduce evidence at to whether a particular regulation was a condition of payment. *Id*. at 309-11.

This Court did not resolve the "condition of payment" issue as a matter of law in ruling on the Motion to Dismiss. As the Special Master correctly perceived, R&R at 29-30, the Court did not foreclose the theory that EDMC may be able to avoid liability by showing that the United States would not have refused payment even if it had known of EDMC's alleged violation of the ICB. The Court merely held that such a defense is fact-intensive and would not justify dismissal of the claims at the pleading stage. The parties will have the opportunity to raise this issue in the context of a fully-developed record at the summary judgment stage.

In accordance with the foregoing, EDMC's Objections to R&R No. 3 will be **OVERRULED**. Plaintiffs' Objections will also be **OVERRULED**.

The Court commends the Special Master for his diligent and exhaustive work on these difficult discovery issues.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA et al, <br> Plaintiffs, <br><br> v. <br><br> EDUCATION MANAGEMENT LLC et al, <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) 2:07-cv-461 <br> ) <br> ) <br> ) <br> ) |

## ORDER OF COURT

AND NOW this 23rd day of July, 2013, in accordance with the foregoing Memorandum Opinion, it is hereby ORDERED, ADJUDGED and DECREED that DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION #2 OF THE SPECIAL MASTER REGARDING PLAINTIFFS' MOTIONS TO COMPEL (ECF No. 263) are **OVERRULED**; DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION #3 OF THE SPECIAL MASTER REGARDING DEFENDANTS' MOTIONS TO COMPEL (ECF No. 264) are **OVERRULED**; and PLAINTIFFS' OBJECTIONS TO THE SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 3 CONCERNING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF MATERIAL AND RESPONSES TO DISCOVERY REQUESTS (ECF No. 269), are **OVERRULED**. Report & Recommendation No. 2 and Report & Recommendation No. 3 of the Special Master are adopted as the opinions of the Court.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: All counsel of record