IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA et al,<br>Plaintiffs,<br><br>v.<br><br>EDUCATION MANAGEMENT LLC et al,<br>Defendants. | )<br>)<br>)<br>) 2:07-cv-461<br>)<br>)<br>)<br>) |

**MEMORANDUM ORDER**

Pending before the Court are: (1) THE UNITED STATES OF AMERICA'S OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 7, 2014 REPORT AND RECOMMENDATION NO. 5 CONCERNING THE DEPOSITION OF DEPARTMENT OF EDUCATION ATTORNEY RUSSELL WOLFF (ECF No. 342); (2) THE UNITED STATES OF AMERICA'S OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 24, 2014 REPORT AND RECOMMENDATION NO. 6 CONCERNING THE 30(b)(6) DEPOSITION OF THE UNITED STATES PERTAINING TO SUPPLEMENTAL RESPONSES TO DEFENDANTS' INTERROGATORIES (ECF No. 352); and (3) THE UNITED STATES OF AMERICA'S OBJECTIONS TO THE SPECIAL MASTER'S FEBRUARY 24, 2014 REPORT AND RECOMMENDATION NO. 7 CONCERNING THE 30(b)(6) DEPOSITIONS OF THE UNITED STATES PERTAINING TO THE INVESTIGATION OF DEFENDANTS BY (i) THE UNITED STATES; AND (ii) THE MASSACHUSETTS ATTORNEY GENERAL (ECF No. 351), with numerous exhibits attached thereto. Defendants ("EDMC") filed responses in opposition to each of the Objections (ECF Nos. 353, 357, 358), and urge the Court to adopt each of the R&Rs. The Objections are ripe for disposition.

The Honorable Richard A. Levie (Ret.), was appointed by the Court as Special Master on November 8, 2012. The R&R's followed extensive proceedings by the parties and the Special Master to resolve and/or narrow their ongoing disputes regarding discovery in this massive and complex case. The Court is acutely aware of its duty to conduct a *de novo* review of the Special Master's R&R pursuant to Fed. R. Civ. P. 53(f). In that regard, the Court has thoroughly analyzed each R&R; the Objections of the United States and the exhibits attached thereto; and the responses in opposition filed by EDMC.

Factual and Procedural Background

By way of brief background, this qui tam lawsuit was originally filed on April 5, 2007. For over four years, the case was stayed at the repeated request of the United States. The United States represented to the Court that it was diligently investigating the allegations made by the relator, including *inter alia* meeting with counsel from the Department of Justice ("DOJ") and agents from the Department of Education ("DOE"), but required additional time to decide whether or not to intervene. On April 29, 2011 the United States filed its Notice of Intervention.

On May 11, 2012 the Court granted EDMC's motion to dismiss Plaintiffs' claims regarding its ADA compensation plan "as written," but denied the motion to dismiss regarding the plan "as implemented." Subsequently, over EDMC's objection, the Court authorized conventional, unlimited discovery and rejected EDMC's proposal for phased discovery based on its statistical evidence. On July 23, 2013, the Court issued an opinion on several discovery topics which are relevant to the pending disputes, including contention interrogatories, discovery of DOJ attorney files, and the government's duty to prepare a privilege log. In that opinion, the Court explained that it would not rule on assertions of attorney-client privilege and/or work

2

product in the abstract or in advance. On September 13, 2013, the Court entered CMO #2, which authorized each side to take up to 70 hours of depositions prior to the close of document discovery. Interrogatories and document productions have been ongoing.

Pursuant to CMO #2, EDMC noticed five depositions on the United States: (1) Kathleen Tighe, Inspector General of DOE[1]; (2) Russell Wolfe, a senior enforcement attorney at DOE; (3) a 30(b)(6) deposition regarding the United States' pre-intervention investigation; (4) a 30(b)(6) deposition regarding the United States' contacts regarding an investigation undertaken by the Commonwealth of Massachusetts; and (5) a 30(b)(6) deposition regarding the United States' preparation of its responses to interrogatories. The United States moved to quash each of these depositions.

Discussion

Special Master R&R's ## 5, 6 and 7 involve closely-related issues and will be addressed together. The United States believes that EDMC is attempting to misuse the "early deposition" procedure, which was intended to streamline discovery, to instigate premature and unnecessary disputes regarding the attorney-client privilege and attorney work product. The United States points out that attorney Wolff has played a pervasive legal role in this litigation and argues that the topics set forth in the 30(b)(6) deposition notices necessarily implicate privileged and/or protected attorney mental impressions (even if the United States designates a non-attorney as its representative) and avers that it has already provided the properly-discoverable information to EDMC. The United States reasons that depositions touching on such sensitive areas should, at a minimum, be postponed until the end of discovery, when all alternative means of obtaining that

---

[1] Tighe's deposition was quashed by the Special Master and is not now at issue. Depositions of relators Lynntoya Washington and Michael Mahoney have been completed.

3

information have been exhausted. More specifically, the United States argues that the Special Master erred by: (1) placing the burden to quash the depositions on the United States; (2) accepting EDMC's representations that the depositions will be tailored to obtain facts, rather than attorney communications and impressions; and (3) requiring it to prematurely answer contention interrogatories, which it fears will be used to unfairly limit its theory of the case. The United States argues that *Advanced Power Systems, Inc. v. Hi-Tech Systems,Inc*., 1993 WL 30067 (E.D. Pa. 1993) (placing burden on party seeking to depose opposing counsel); *SEC v. SBM Investment Certificates*, 2007 WL 609888 (D. Md. 2007); and *EEOC v. McCormick & Schmick's Seafood Restaurant, Inc*., 2010 WL 2572809 (D. Md. 2010) (quashing 30(b)(6) depositions that would reveal attorney work product), provide the applicable legal principles.

EDMC articulates a far different perspective. As an initial matter, EDMC contends that it is seeking relevant, factual information regarding "what the government knew and when it knew it." EDMC points out that Wolff has personal knowledge of core matters and is not an attorney of record in this litigation. EDMC characterizes the interrogatory responses of the United States as "inscrutable" such that followup questions are necessary and also notes that the 30(b)(6) notices do not require the United States to designate an attorney as the deponent. EDMC contends that the United States has not met its burden to quash the depositions and that it cannot assert attorney-client privilege and/or work product in a preemptive and blanket manner. EDMC has submitted deposition testimony from DOE and DOJ representatives to the effect that the United States did not reasonably anticipate litigation until April 29, 2011, the date the United States actually intervened in this case.[2] EDMC reasons that the depositions should be allowed to proceed, as scheduled, and that any assertions of attorney-client privilege and/or work product be made during the depositions in response to specific questions.

---

[2] The Court makes no ruling on this issue, as it has not been ruled on by the Special Master.

The Special Master essentially agreed with EDMC. In R&R #5, he analogized Wolff's status as akin to that of a corporate in-house counsel; deemed the proposed deposition to be "appropriately tailored"; and found the assertions of privilege and work product by the United States to be premature. The Special Master recommended that the deposition of Wolff should proceed, with the United States asserting privilege and work product objections, if appropriate, during the deposition. In R&R #6, the Special Master concluded that the proposed 30(b)(6) deposition regarding the United States' interrogatory responses would be an efficient method to adduce relevant evidence, inter alia regarding how the United States identified the 1100 individuals listed in its interrogatory responses and what information those individuals actually possess, and recommended that it proceed. The Special Master cautioned EDMC counsel to take care to formulate the questions to avoid duplication of information that is already known.[3] The Special Master again found the assertions of work product protection by the United States (on the ground that Carney McCullough, the designated DOE representative, had relied on counsel to collect the information for the interrogatory responses) to be premature, and perhaps untenable. In R&R #7, the Special Master similarly rejected the government's attempt to preemptively quash the 30(b)(6) deposition regarding the pre-intervention investigations of the United States and Massachusetts due to assertions of privilege and concluded that EDMC had identified numerous areas of discoverable evidence.

As this Court has previously recognized, the decision of the United States to intervene in civil litigation creates unavoidable complexity because the government has unique interests and capabilities which are simply not applicable to other litigants. The doctrinal disputes underlying R&R Nos. 5, 6 and 7 are illustrative of this complexity. While the attorney-client privilege and work product protections are undoubtedly applicable to the United States, the application of

---

[3] The Court reiterates this directive.

those principles is "invariably problematic in light of the principle that the reasons and bases of government actions which affect the governed should be transparent." Edna Selan Epstein, The Attorney-Client Privilege and the Work-Product Doctrine, Vol. I at 181 (American Bar Assoc. 5th ed. 2007).

Balancing the competing interests is particularly challenging in this case. Plaintiffs have filed serious charges against EDMC and seek recovery of billions of dollars. EDMC has been subject to a tremendous burden in discovery. The United States made a knowing and informed decision to voluntarily intervene in this qui tam litigation. In that light, the United States' concerns with the burden of reciprocal discovery by EDMC ring hollow. Moreover, the United States cannot reasonably expect to dictate its opponent's strategy and tactics.[4]

Similarly, this Court has little sympathy for the United States' argument that its disclosures of evidence will be "premature." This litigation has been pending since 2007 – it is seven years old and counting -- with the Court having granted the numerous requests of the United States for extensions of time to perform a diligent pre-intervention investigation. Plaintiffs' "as implemented" theory of the case has been clearly articulated; it is now time to produce evidence. The Court sees no utility to continued efforts by either side to "hide the ball."

The Court agrees with the resolution and reasoning of the Special Master as to the disputed legal issues. Under binding Third Circuit precedent, the burden is on the party seeking a protective order to quash a deposition (in this case, the United States). *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); Fed. R. Civ. P. 26(c). There is no binding

---

[4] As a practical matter, the "early deposition" process is intended to enable both sides to obtain the information each thinks is most valuable. Ideally, the flexible sequencing of discovery may enable the parties to streamline further discovery; file potentially dispositive motions (in whole or part); and perhaps facilitate settlement.

6

authority to shift this burden if the deponent is an attorney.[5] The Court is not persuaded by *Advanced Power Systems,* 1993 WL 30067, because Wolff is not an opposing attorney of record in this litigation. Indeed, the DOE is not a party.

The Special Master also correctly concluded that the attorney-client privilege and work product doctrines cannot be wielded as a preemptive shield to quash the depositions in advance. As this Court explained in *Smith v. Life Investors Ins. Co. of America*, 2009 WL 3364933 (W.D. Pa. 2009), and *EEOC v. LifeCare Management Services, Inc.*, 2009 WL 772834 (W.D. Pa. 2009), such assertions must be made during the deposition on a question-by-question basis. *See also Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560, 565 (3d Cir. 1976). The blanket assertions made by the United States are premature.

These principles apply with even greater force to the 30(b)(6) depositions, which on their face do not require attorney testimony at all. To the extent that attorney communications or mental impressions might be indirectly disclosed, the United States must make an appropriate objection during the course of the deposition. The mere fact that the United States has provided some discovery responses does not relieve it of its obligation under Rule 30(b)(6) to provide a witness to answer questions about those documents for purposes of clarification and interpretation. *EEOC v. LifeCare Management Services, Inc.*, 2009 WL 772834 at *2. Moreover, the underlying facts obtained by the DOE and/or Massachusetts in their underlying investigations may be discoverable. *Id.*; *Accord State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 214-15 (E.D. Pa. 2008) (citations omitted) (facts learned by attorney are discoverable, even if lawyer's mental impressions are not). *See also United States ex rel Lisitza v. Par Pharma. Co., Inc.*, 2014 WL 222727 (N.D. Ill. January 21, 2014) (addressing discoverability of similar investigation). In summary, the depositions shall proceed.

---

[5] Even if EDMC did bear the burden, the Court concludes that there is good cause to take the contested depositions.

Nevertheless, some of the concerns expressed by the United States do resonate with the Court. EDMC's decision to take these particular depositions, which implicate difficult attorney-client privilege and work product issues, has the potential to adversely impact the remaining discovery. It appears to the Court that the parties would be well-served to meet and confer in advance of the depositions in an effort to develop appropriate groundrules (perhaps with the assistance of the Special Master). In addition, the Court instructs the parties to work expeditiously to resolve these disputes. The Court does not regard the existence of outstanding disputes (if any) from these "early depositions" as a valid reason to postpone any other discovery deadlines. To reiterate, discovery shall proceed while any remaining issues are resolved.

Conclusion

In accordance with the foregoing, the Objections of the United States (ECF Nos. 342, 351, 352) are hereby **OVERRULED.** The Court accepts the recommendations of Special Master Levie and adopts R&R's ## 5, 6 and 7 as the opinions of the Court. The Special Master has been effective and professional in resolving, narrowing and/or clarifying the numerous difficult discovery issues in this case. The Court will not conclusively rule on the merits of specific assertions of attorney client privilege and/or work product protection until they have been fully developed by the parties and Special Master pursuant to the case management order.

SO ORDERED this 9th day of April, 2014.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:   All counsel of record