# EXHIBIT A

```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2
    _____
 3
    UNITED STATES OF AMERICA, ET AL.,
 4
                    PLAINTIFFS
 5
              vs.                    CIVIL ACTION NO. 07-461
 6
    EDUCATION MANAGEMENT CORPORATION,
 7  ET AL.,
                    DEFENDANTS
 8  _____

 9                     PROCEEDINGS

10      Transcript of CASE MANAGEMENT CONFERENCE, commencing
    on TUESDAY, OCTOBER 2, 2012, AT 1:10 P.M., in the United
11  States District Court, Sixth Floor, U.S. Post Office and
    Courthouse Building, Pittsburgh, Pennsylvania, before the
12  HONORABLE TERRENCE F. McVERRY, UNITED STATES DISTRICT COURT
    JUDGE.
13

14  APPEARANCES:

15  For the Plaintiffs: By:   Christy C. Wiegand, Esquire

16                            Michael A. Comber, Esquire

17
    For the Plaintiff California:
18                   By:   Kenny V. Nguyen, Esquire

19  For the Plaintiff Florida:
                     By:   Rene D. Harrod, Esquire
20
    For the Plaintiff Illinois:
21                   By:   Jennifer M. Zlotow, Esquire

22  For the Plaintiff Indiana:
                     By:   Patricia O. Erdmann, Esquire
23                         Corinne W. Gilchrist, Esquire

24  For the Plaintiff Minnesota:
                     By:   Jason Pleggenkuhle, Esquire
25
```

```
 1
 2   APPEARANCES:  (CONTINUED)

 3   For the Plaintiffs Montana, New Jersey, New Mexico, New York,
         Tennessee, The District of Columbia:
 4                        By:   Harry P. Litman, Esquire

 5                               Thomas J. Farrell, Esquire

 6

 7   For the Facilitator:By:   Mary Chu, Esquire

 8

 9   For the Relators:   By:   Stuart Rennert, Esquire

10                               Jay Reisinger, Esquire

11                               Thomas Farrell, Esquire

12                               Harry Litman, Esquire

13

14   For the Defendants: By:   Laura E. Ellsworth, Esquire

15                               Thomas S. Jones, Esquire

16                               Anderson T. Bailey, Esquire

17                               Devih Kramer, Esquire

18                               Jeffrey Bresch, Esquire

19

20
     Reported by:              Sandra Wenger, FCRR, CM
21                             Official Court Reporter
                               Fifth Floor, U.S. Courthouse
22                             Pittsburgh, Pennsylvania 15219
                               412.261.6254
23
     Proceedings recorded by mechanical stenography.  Transcript
24   produced by computer-aided transcription.

25
```

1     We're willing to turn those over immediately for
2 purposes of an ENE.  We are willing to present at that ENE,
3 whether the government chooses to participate or not in the
4 assessment of the data, a statistical analysis which will
5 demonstrate, we believe, unequivocally, that enrollments were
6 not the sole factor in either the quality points that were
7 given, nor in the salary adjustments that were actually made.
8     We believe that that evidence, which is similar
9 to evidence, as Your Honor knows, that was presented to the
10 government for the case is now being presented with respect
11 to every one of the fourteen thousand.  We'll give them the
12 documents.
13     We have even offered to give them and share with
14 them the database that we created that, basically, pulls these
15 numbers off the fourteen thousand sheets and puts them in a
16 spread sheet that statisticians can use.  We have asked to be
17 compensated for that because it was expensive and time-
18 consuming, but we offered to share that with them.
19     Here, Your Honor, is why I really think this is not
20 a question of economy alone.  It is profoundly a question of
21 judicial economy and getting to the point in the most
22 effective way as the rules compel us to do.  It is so much
23 more than that for the following reason.
24     As reflected in the briefs, this case is also
25 unique in the following respect.  It is the first time the

1               Because you want to know what evidence they have,
2    but until they have discovery to follow up on the claims that
3    they've made and that I've sustained their ability to pursue
4    will require extensive discovery, I suspect.
5               All I'm saying is wouldn't that information help
6    expedite?  You're going to get it, anyway.  Wouldn't that help
7    expedite the tailoring of discovery moving forward?
8               MS. WIEGAND:  Your Honor, we actually believe that
9    the ENE as conceived by defendants would, ultimately, delay
10   the resolution of this case, because the statistics are not
11   going to be dispositive and we need to discover information
12   such as communications between admissions personnel and their
13   supervisors, and executives, and we need to understand what
14   metric EDMC was tracking, what it was telling its student
15   recruiters in, in training.
16              If we, if we go down the ENE road, as proposed by
17   the defendants, we're going to spend four or six months doing
18   the sort of data intensive analysis they propose as part of
19   the ENE without getting to the real discovery that is at the
20   heart of our as implemented claims.
21              So, it will be six months from now and we won't
22   have started the discovery to which we're entitled.  Whereas,
23   if the Court were to send us into fact discovery now, six
24   months from now we would have substantial, we would have made
25   substantial progress on written discovery, and on depositions,

1          And in the brief that was filed this morning, the
2  government admits this is relevant.  The government admits
3  this is very important information in their case, that we are
4  willing to turn over fourteen thousand of these.  We are
5  willing to turn over a shared data set.
6          We are willing to expedite this as fast as they
7  like.  And whoever sees that, whether it is by an ENE process,
8  whether it is Your Honor, whether it is with or without the
9  expert assistance of a statistician, it is imperative, before
10 this Court or anybody else assesses what a proper scope of
11 discovery is, as opposed to an abusive scope of discovery for
12 an improper purpose, that information ought to be seen.  And
13 it ought to be seen fully and fairly.
14         We didn't want to take up the time of the Court to
15 do that, which is why we suggested a consensual ENE, the
16 fruits of which, the bottom line of which, could be shared
17 with Your Honor.  We think that's the most efficient way to
18 proceed.  But if they don't want to, then we think it ought
19 to happen in front of you, Your Honor.  It could be done very
20 quickly.  It could be done, the hearing itself could be less
21 than an hour.
22         But the fact of the matter is here, Your Honor,
23 that whatever communications, or back-and-forth, or training,
24 or whatever went on, if the fact is that the enrollments were
25 not the sole factor in driving the ratings that were given or

1    to this case.  And we would respectfully submit that the time
2    for that would be following fact discovery, following the
3    chance for each party to have expert discovery, for each of
4    us to retain our own statistical experts, and analyze the fact
5    discovery and then present it to the Court.
6            THE COURT:  That's right.  I mean, you're not
7    going to be deprived of your right to discovery.  I was only
8    following up on the ENE offer for the reason that I explained.
9            I still don't know it wouldn't be a good thing for
10   to you do.  But, at the same time, you may not want -- well,
11   you want mediation.  They want this other hybrid kind.  Well,
12   it's less hybrid now because I, if I haven't implied it, I'll
13   state it.  That whatever would be presented to an ENE, and
14   it's not going to be me, whoever, whatever would be presented
15   to that neutral wouldn't automatically become evidence to
16   support a summary judgment, an early summary judgment motion.
17   I mean, that, in a certain respect, turns ENE on its head.
18           MS. ELLSWORTH:  And, Your Honor, to be clear.  I do
19   not intend for it to short-circuit a fair process.  What we
20   had recommended was that the ENE would allow everybody to
21   see in great detail why we are saying that it is imperative
22   to understand that as a condition of setting an intelligent
23   and fair discovery plan here.
24           And, again, we can do that in an ENE.  We can do
25   that in front of you with respect to the data.  We believe

1   it's important for you to see it.  We could do it today, if
2   you would like.  We're prepared to do it today.
3          What we thought was fairer was to give it to the
4   government, too, and to give them whatever they wanted to do.
5   If they wanted to do something with all of the experts that do
6   this day in day and day out for them, fine.  If they don't,
7   fine.  But we would  do it.  And we would equip them to do it.
8   We would bring it to you.  We would say, does this make sense
9   to you in assessing what would be fair discovery for both
10  parties.  That's all we've asked, Your Honor.
11         THE COURT:  Okay.  I understand.  I'm going to give
12  that some thought.  I'm not going to rule from the bench right
13  now.  Initially, I thought that an ENE at this stage would not
14  be a good thing because of no discovery.  I mean, do you --
15  you are entitled to discovery and you will have it.
16         MS. WIEGAND:  Thank you, Your Honor.
17         THE COURT:  My only thought was, as I previously
18  expressed, having this information up front may be helpful in
19  the overall prosecution of the case.  You're going to get it
20  sooner or later, anyway.  Why you wouldn't want it now is --
21         MS. WIEGAND:  Your Honor, it's not that we don't
22  want to have information, but the way the defendants had
23  conceived of the ENE really was, was a way of limiting and
24  constraining the discovery that we feel that we're entitled
25  to in the case.  It was that conception that we took issue

1  with.

2           THE COURT:  Okay.

3           MS. ELLSWORTH:  Your Honor, as you know, we think
4  they don't want it now because they know what it would show,
5  because they've seen a big chunk of it before.  They know what
6  this data shows.

7           THE COURT:  But the reality of the matter is, I
8  understand what you're saying, but the the reality of matter
9  is they're going to get the data through the discovery
10 process, anyway.

11          And they now know, like me, what the data shows
12 because you've told us what it shows.  But fourteen thousand
13 pieces of paper may be more convincing than just your oral
14 argument.

15          But your oral argument has implied strongly to me
16 what the documentation's going to say and what the statistics
17 are going to say.  But those things came from somewhere.
18 Somebody put whatever is on the paper on the paper.  And
19 they've put what's on the paper for whatever reason they put
20 it on the paper.

21          If it's found that the reason was what you contend,
22 that's the policy, then that's one thing.  If it gets put on
23 the paper for reasons other than what the policy, the stated
24 policy is, that's another.

25          MS. ELLSWORTH:  Your Honor, I submit to you, and I

1  know I'm promising, I submit to you that when you see the
2  data analysis you would have an answer to that question you
3  just asked.
4              MS. WIEGAND:  And we would respectfully disagree,
5  Your Honor.
6              MS. ELLSWORTH:  All I'm saying is you should have an
7  opportunity to decide that for yourself.
8              THE COURT:  Respectfully disagree that I would have
9  an answer?
10             MS. WIEGAND:  I'm sorry, Your Honor.  We
11 respectfully disagree that that's what the data would show.
12             THE COURT:  Well, I'm not surprised to hear that.
13 You are sitting at different tables with different advocacy
14 goals.
15             So, as I said, I'll take that matter under
16 advisement.  The initial disclosures have not yet been made,
17 I understand.  And there's -- you're ready to make yours and
18 Education Management isn't.
19             Is that fair, Ms. Ellsworth?
20             MS. ELLSWORTH:  What Education Management proposed,
21 Your Honor, is that the ENE would be the place and time for
22 setting out any phasing of discovery that was appropriate.
23 And in light of that ruling, we would make disclosures ten
24 days thereafter.
25             That remains our position because we believe that a

1        MS. ELLSWORTH:  Yes.
2        THE COURT:  All right.  Then, we'll recess.  I may,
3   I may call you back for another conference of this sort
4   whenever I've sorted out what I'm going to do and tell you
5   what I'm going to do before I put it in writing, so that if
6   you have comments or questions that ring with me then there
7   will be modifications of that order.  Modifications of that
8   order so that you're involved in the process.
9        MS. WIEGAND:  Thank you, Your Honor.
10       MS. ELLSWORTH:  Thank you.
11       THE COURT:  All right.  Thanks for coming in.
12       (Whereupon, the Court was concluded on the second
13  day of October, 2012.)
14                        - - -
15                   C E R T I F I C A T E
16                        - - -
17       I certify by my original signature herein that the
18  foregoing is a correct transcript from the record of
19  proceedings in the above-entitled matter.
20
21
                            s/Sandra Wenger, FCRR, CM
22                          Official Court Reporter
23                          DATED: October 24, 2012
24
25     *****NOT CERTIFIED WITHOUT ORIGINAL SIGNATURE*****