# EXHIBIT K

# JONES DAY

500 GRANT STREET • SUITE 4500 • PITTSBURGH, PENNSYLVANIA 15219.2514
TELEPHONE: 412.391.3939 • FACSIMILE: 412.394.7959

Direct Number: (412) 394-7231
jbresch@jonesday.com

January 28, 2014

VIA EMAIL

Christy Criswell Wiegand, Esq.
Assistant United States Attorney
Western District of Pennsylvania
U.S. Post Office & Courthouse
700 Grant Street, Suite 4000
Pittsburgh, PA  15219

Re:  *United States of America, et al. v. Education Management Corporation, et al.* Civil Action No. 07-461)

Dear Christy:

I am writing to respond to your letter of January 15, 2014, as well as your letter of December 23, 2013.

**1. Emails of Admissions Employees *from Backup Tapes*.**  Like your December 23 letter, your January 15 letter asserts that EDMC is refusing to produce 10 years worth and "untold millions" of emails from Admissions Employees. This is simply not true. To date, EDMC has produced more than 7.9 million pages of ESI from Admissions Employees, with the earliest dating to at least May 8, 2000. *See* EDMC-WASH-02590115. Had the Government engaged in a review of EDMC's productions to date (or, for that matter, read the cover letters), it would know this. Indeed, given the Government's January 10 request that EDMC provide further instructions on how to access the hard drive containing EDMC's December 31 production, it is clear that the Government *did not even open* EDMC's December 31 production until that date. We are hard-pressed to believe that the Government completed its review of that production—a review that could not have started prior to January 10—before sending its January 15 letter.

EDMC remains in the process of collecting and producing what may amount to "untold millions" *more* Admissions Employee emails and other ESI from accessible sources. As set forth in R&R No. 4, EDMC will use January 1, 2002 as the start date for its productions. Thus, to the extent that those responsive, non-privileged documents exist in a reasonably accessible form within this time period, EDMC plans to produce them so long as it is reasonable to do so.

What your January 15 letter acknowledges for the first time—and what your December 23 letter ignored altogether—is that the Government is now seeking email from EDMC's disaster recovery backup tapes. Backup tapes are the quintessential inaccessible

**JONES DAY**

Christy Criswell Wiegand, Esq.
January 28, 2014
Page 2

source. *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 322 n.68 (S.D.N.Y. 2003). EDMC's 30(b)(6) designee testified that such backup tapes were for disaster recovery purposes only. Miko Dep. 95:13-20. While you claim EDMC's designee testified that such backup tapes were "accessible," a plain reading of the transcript reveals that he was treating the word "accessible" as most laypeople would and not in the legal sense of whether ESI is accessible or not under the Federal Rules of Civil Procedure. Mike Dep. 200:17-19 ("Like, I can go get you the tape. If you tell me to get you the monthly back-up tape for June of 2003 for file shares, that's accessible."). While Mr. Miko may well be able to locate certain backup tapes, as explained in detail in Exhibit 1 to the deposition of EDMC's designee (*see* Topic 15), EDMC's backup tapes are not an "accessible" source of ESI under the rules. It is not reasonable to require that EDMC produce ESI from these inaccessible sources.

In any event, as stated above, EDMC remains in the process of collecting and producing Admissions Employee emails for the period January 1, 2002 to December 31, 2012 from accessible sources. Thus, it is premature to discuss whether it is necessary to obtain data from inaccessible disaster-recovery backup tapes (as well as who should bear the burden of paying that cost, particularly where the Government waited *four years* to inform EDMC of the litigation) until the parties review what is available from accessible sources. And given that EDMC's collection and review is ongoing, EDMC is not in a position to provide lists of former employees for which EDMC may have no ESI.

**2. Structured Databases.** Once again, the Government's comments on databases demonstrate that the Government is not reviewing EDMC's productions or their accompanying cover letters. For example, the Government alleges that it received "conflicting testimony" about EDMC's plans to produce from RACER. Yet, as set forth in EDMC's Exhibit B to its December 31 cover letter, EDMC's December 31 production—which the Government did not bother even opening until January 10—included more than 900,000 pages from RACER. In fact, EDMC has already produced all *responsive*, non-privileged documents contained in RACER. EDMC-WASH-6674482-7579286.

With respect to CARS, CampusVue, and Lawson, and as plainly set forth in Exhibit 1 to the deposition of EDMC's 30(b)(6) designee (Topic 5 (m)(i)), EDMC's production from databases will consist of three parts, even though your letter ignores the second and third. First, to the extent that EDMC identifies responsive reports within the ESI of individual custodians, EDMC will produce those reports. Second, to the extent that there are standard reports from those databases that would be responsive to the Government's requests, EDMC will run and produce those. Third, to the extent necessary and practicable, EDMC will create *ad hoc* reports to provide the Government with responsive information. This process is ongoing.

Finally, as hidden in Footnote 1 to your letter, ImageNow is an "imaging system" that hosts images of documents. It is not, as the body of your letter suggests, a structured database that has numerous fields to be produced. To the extent that responsive documents are identified in ImageNow, they have been and will continue to be produced.

JONES DAY

Christy Criswell Wiegand, Esq.
January 28, 2014
Page 3

As stated above, EDMC is in the process of running reports from its true structured databases—CARS, CampusVue, and Lawson—that respond to the Government's discovery requests. Once that production is complete *and* the Government actually reviews those reports, EDMC is willing to discuss at that time whether additional fields are necessary and/or whether it is appropriate to provide lists of the thousands of fields contained in EDMC's databases.

**3. Document Retention Policy.** EDMC is reviewing this request and will respond separately no later than February 7.

**4. Custodians.** Unlike the Government and the States, EDMC has already provided and will provide custodian lists with respect to each of EDMC's productions. Each cover letter contains a list of all custodians included within that production. We request that the Government and the States provide this information for the prior and going-forward productions.

To the extent that the Government is requesting that EDMC identify every possible custodian and whether an attorney has determined whether that person has responsive information, such a request plainly seeks EDMC's attorney work product, and EDMC declines this request.

**5. Litigation Holds.** EDMC is reviewing this request and will respond separately no later than February 7.

**6. Other Issues.** Your December 23 letter also asked two questions of EDMC: (1) whether EDMC will add certain attorney names; and (2) whether EDMC will include as a search term every Director of Admission. Both of these questions were asked in your December 16 letter and responded to in our December 19 letter. For your reference, EDMC's responses from that letter are below:

- Are there particular names of EDMC employees that Defendants did not include in their search term list based on the manner in which they are conducting their search for materials? Why did Defendants not include names of counsel who have represented them in this or other actions concerning the ICB in their search term list?

  EDMC'S ANSWER: EDMC's search terms were initially designed to identify potentially responsive documents based on subject matter, not author or recipient. The Government added specific names. With respect to counsel names, the persons most likely to have such communications have been subject to linear searches. To the extent that the future documents demonstrate a need to run additional search terms, EDMC has already expressed a willingness to consider such requests.

- Does EDMC's search term list include all attorneys—in-house and outside counsel—from 2002 to December 31, 2012 who were involved in advising EDMC concerning their admission employee compensation plans, the ICB, and government investigations concerning potential violations of the ICB by any EDMC affiliated school?

  EDMC'S ANSWER: Please see the Answer to the preceding question.

JONES DAY

Christy Criswell Wiegand, Esq.
January 28, 2014
Page 4

\* \* \*

- Why haven't Defendants listed every Director of Admission who was involved in supervision of Admissions Employees on their search term list?

  EDMC'S ANSWER: The more than 9,000 search terms are designed to capture responsive documents from any person, whether a supervisor or not.

- Are there other names of employees who were involved in supervision of Admissions Employees on a daily basis from January 1, 2002 to December 31, 2012 whom Defendants have failed to list on their search term list?

  EDMC'S ANSWER: Please see the Answer to the preceding question.

Finally, with respect to the Government's search terms, and as referenced in our letter to you of January 17, we have serious concerns regarding deficiencies in the Government's production. These deficiencies affect our ability to analyze the Government's search terms. Despite these deficiencies, we are continuing to review and analyze the Government's production and evaluate the Government's search terms. Once that process is complete, we will be in touch.

Sincerely,

Jeffrey J. Bresch

cc: Laura E. Ellsworth, Esq. (via email)
Matthew R. Divelbiss, Esq. (via email)