# EXHIBIT L



**U.S. Department of Justice**

*United States Attorney*
*Western District of Pennsylvania*

*U.S. Post Office & Courthouse*
*700 Grant Street*
*Suite 4000*
*Pittsburgh, Pennsylvania 15219*          *412/644-3500*

December 23, 2013

**VIA E-MAIL**

Jeffrey J. Bresch, Esq.
Jones Day
500 Grant Street
Suite 4500
Pittsburgh, Pennsylvania 15219-2514

      RE:   *United States of America, et al. v. Education Management Corporation, et al.*,
                **Civil Action No. 07-461**

Dear Jeff:

Thank you for your letter of December 19, 2013. At the outset, we note our disappointment that Defendants declined to meaningfully respond to many of the questions we posed in our December 16th letter that fully responded to Defendants' questions. Referring us to the Special Master's Report and Recommendation in response to many of our questions to Defendants does not foster the cooperation that the Special Master is clearly seeking to encourage among the parties. Our concerns are only exacerbated by the recent Rule 30(b)(6) deposition of Defendants this past Thursday that revealed *for the first time* two critical facts about Defendants' production: (1) Defendants will claim that almost 10 years of their electronic mail are not reasonably accessible; and (2) Defendants are not directly querying their structured databases even though Defendants have acknowledged the structured databases contain highly relevant information. These revelations are shocking and will need to be addressed early in the New Year.

As for the parties' search term dialogue, we respond to Defendants' questions below, and identify below a non-exhaustive list of additional questions that we want Defendants to answer, in the hope that the parties can finally engage in a cooperative dialogue on search terms. Because your questions fall into categories, we have combined certain responses. However, we continue to believe that the most efficient means of resolving the search term issue is to have a meaningful meet and confer on any remaining questions. We look forward to that discussion in the New Year and to Defendants' responses to our questions before we meet at a mutually convenient time. In the meantime, the United States will continue to employ the search terms it provided by letters in late November and early December, for appropriate custodians and sources, for purposes of our December 31st production. We will then supplement our production in January with any additional responsive documents that we find based on the additional search terms agreed to below.

**DEFENDANTS' NEW QUESTIONS**

**QUESTIONS 1, 2**: These questions ask how the Government is identifying documents for collection and for which custodians "on a category level" the Government intends to use such terms.

The United States is using both a custodian-based method for identifying documents for collection as well as searching central electronic and hard copy files. Components and offices within the United States Department of Education and the United States Department of Justice were identified based on Defendants' document requests and the Court's rulings on the motions to compel. Collection has proceeded after a reasonable search to identify relevant custodians (both former and current employees) and any relevant central files. This has included the collection, processing, and production of data not currently existing on an active file server, at great expense. In conjunction with identification of central files and relevant custodians, interviews have been conducted to identify relevant material for collection.

The United States has not yet determined whether it will be appropriate to apply search terms to a "category" of employees. Unlike Defendants, who have simply aggregated their collection and referred the United States to Report and Recommendation No. 4 as justification for not distinguishing among their custodians, the United States intends to employ search terms only where it is necessary to do so. As has been Defendants' practice, the United States will provide Defendants with the names of those custodians and identification of those sources for which it has used search terms at the time it produces the material.

**QUESTION 3**: This question seeks additional information regarding the process by which the United States developed its search terms.

The United States previously described in its December 16th letter how it derived the search terms. The United States tested these search terms against a substantial amount of material collected from a significant number of custodians. As part of that process, search terms and search strings that generated an excessive number of non-responsive hits were modified; tests were also run to verify that the search terms were not under-inclusive of relevant material. As is inevitable with all processes involving search terms, the results one obtains from using search terms for review are by definition less precise that a full linear review would provide. That said, the United States believes the search terms it proposed are reasonable and appropriate given Defendants' document requests. As previously indicated on multiple occasions, however, we are happy to consider any additional search terms that Defendants would like to propose.

**QUESTIONS 5, 6, 7, 8, 10, 11, 12, 13, 16, 17, 18:** These questions all seek various modifications to the United States' search terms. Each question is addressed in turn.

**QUESTION 5**: You have acknowledged that certain names, such as "Washington" and "West" cannot be run as standalone terms because of the large number of false hits that will be generated, but request that the United States search last names only for "the vast majority" of the other names. We do not believe such a modification to our search terms is necessary. We agree,

however, that certain names may be effective as standalone search terms, and will review the names to determine which can be run standing alone. The United States will agree to run these names in any part of a production of documents it makes after January 1, 2014 that uses search terms, and will ensure for previous productions it has made that these same names are run without the prefixes.

**QUESTION 6**: You have requested that the United States add Hansen, Tighe, and Wolff to the list of search terms, claiming *inter alia* that "all have relevant information." The United States agrees to add Mr. Hansen to the list of search terms. However, the United States would like to better understand why you believe that Ms. Tighe's and Mr. Wolff's names should be added as search terms and will be prepared to meet and confer in the New Year to discuss these issues with you at a mutually convenient time.

QUESTION FOR DEFENDANTS:  Because of their potential relevance to the issue of Defendants' scienter, as well as related issues including document preservation obligations, will Defendants agree to add the attorneys who have represented them in administrative, investigative, and litigation proceedings concerning the Incentive Compensation Ban? If not, why not?

QUESTION FOR DEFENDANTS:  Because of their central role in what Defendants' "real compensation practices" were and are (one of the key inquiries of this case), why are Defendants declining to agree to use as search terms the names of their Directors of Admission, as well as other employees involved in supervising Admissions Employees? Defendants did not indicate that it would be unduly burdensome to add these names, or that their addition would be over-inclusive. Please explain why you are declining to use supervisor and DOA names in your search terms.

**QUESTIONS 7, 8, 10**: You request that the United States employ as standalone searches general terms applicable to many – if not all – educational institutions within the purview of the Department of Education (such as ADA, admis*, director of admission) or applicable to the regulatory scheme that the Department of Education is authorized to enforce (such as ICB or Safe Harbor). Some of these terms were tested and deemed not feasible, while others are not likely to result in many – if any – more positive hits because of the totality of the terms that the United States is already utilizing. Department programs provide grant, loan and work-study assistance to more than 10 million undergraduate students at thousands of institutions of higher education. So, using the search word admis* on its own will lead to massive over-inclusion of non-responsive documents. To be clear, the United States will not refuse to employ search terms that are reasonably constructed to yield relevant results. But using these search terms alone will not do that.[1] We are prepared to discuss each of these with you at a mutually convenient time in the New Year.

---

[1] Based on the United States' tests, terms like "safe harbor" and ICB standing alone will also yield over-inclusive results. At one time, there were 12 "safe harbors" but only one of them is relevant to this case. And clearly, Defendants do not reasonably believe that every document related to the "ICB" is relevant to this case.

We remain baffled by your continued insistence that the United States use the search terms that Plaintiffs requested Defendants use. Defendants' search terms – and the ones Plaintiffs to date have been able to suggest Defendants use – are designed to yield results pertinent to documents in the possession of Defendants. They are based on the nature of documents Defendants possess and what Plaintiffs have requested in their document requests. The same should be true for search terms being used by the United States – or being suggested by Defendants; they must be based on and tailored to the nature of documents that the United States possesses and that Defendants' document requests target. Clearly, those two universes of documents are different here. Defendants' suggestion that the parties should utilize the same search terms, rather than work cooperatively to finalize search term lists that reflect what each party possesses and has requested, does not, in our view, make any sense. That said, we will be prepared to meet and confer with you in the New Year at a mutually convenient time to try to better understand your position.

**QUESTIONS 11, 12, 13, 16, 17, 18**:

The United States will agree to delete the word "Incentive" as a modifier to "ICB."

The United States will agree to use state email domains of any Attorney General Office of an Intervenor or Real Party in this action in conjunction with its reasonable search for information related to aspects of the governmental investigation of EDMC that the United States has agreed to, or been ordered, to conduct a reasonable search.

The United States agrees to run the variations of the date August 8, 2011 that you propose together with the variations of the phrase "New York Times" that you propose.

The United States will also agree to run searches for the statutory citations for the ICB and revoked Safe Harbor provisions. The United States will not add "Western District of Pennsylvania" to its search term list, as this would result in massive over-identification. We are prepared to discuss with you in the New Year at a mutually convenient time any legitimate concerns you have, and ways of addressing them in a productive way.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Finally, we would be remiss if we did not comment on the tone of your letter and recent comments from your colleagues at the December 11, 2013 Special Master telephone conference. There are no "glaring omissions" that we did not address in our December 16th letter. We responded in good faith and at length to all of your questions – something Defendants failed to do in response to our straightforward questions. We are concerned that Defendants would rather create a false impression with the Special Master than engage in meaningful cooperation in discovery. Distressingly, Defendants' increasing use of hyperbolic language – and wildly inaccurate and inflammatory argument about the motives and practices of opposing counsel – has become an impediment to constructive dialogue. It needs to stop. There is much to be done to prepare this case for trial, and as Judge Levie has commended to the parties, cooperation will be essential. We look forward to more of it in the New Year.

          Very truly yours,

          DAVID J. HICKTON
          United States Attorney

          /s/ Christy C. Wiegand
          CHRISTY CRISWELL WIEGAND
          Assistant U.S. Attorney
          (412) 894-7452

cc:  The Hon. Richard A. Levie (ret.) (via email)
    Christina Calce, Esq. (via email)