# EXHIBIT M



**U.S. Department of Justice**

*United States Attorney*
*Western District of Pennsylvania*

*U.S. Post Office & Courthouse*
*700 Grant Street*
*Suite 4000*
*Pittsburgh, Pennsylvania 15219*          *412/644-3500*

January 15, 2014

**VIA EMAIL**
Jeff Bresch, Esq.
Jones Day
500 Grant Street
Suite 4500
Pittsburgh, Pennsylvania 15219

      RE:  *United States of America et al. v. Education Management Corp. et al.,* **Civil Action No. 07-461**

Dear Jeff:

      Plaintiffs write to raise a number of issues regarding the scope of Defendants' search and collection efforts undertaken to respond to the pending document discovery requests, and related issues stemming from the December 19, 2013 deposition of Defendants' Rule 30(b)(6) witness, Mr. Mark Miko.[1]  The matters raised herein are serious, are contrary to representations that counsel for Defendants has previously made to the Special Master and the Court, and require immediate attention.  Please provide a written response to the issues and questions raised in this letter no later than Tuesday, January 21st.  If in addition to a written response you would like to discuss any of the matters raised in this letter, we are available on Monday, January 27th or Tuesday January 28th.

**1. Emails of Admissions Employees.**  As Judge McVerry and Judge Levie have made clear throughout this litigation, discovery of Defendants' "real" compensation practices is at the heart of this litigation, making communications among Defendants' admissions personnel over the period in question an absolutely essential part of discovery.  Plaintiffs' document requests

---

[1]  This letter is not intended to be an exhaustive list of deficiencies that stem from the December 19 deposition of Defendants' Rule 30(b)(6) designee, including the witness' complete lack of preparation on various questions and the repeated invocation by the witness of Devitt Kramer as the person with knowledge.  We will be corresponding with you separately on these additional subjects in the hope that we can find ways to obtain the information short of motions practice.

therefore properly sought all communications among Admissions Employees[2] and between Admissions Employees and other employees of Defendants regarding various topics that are central to this action, including, but not limited to, enrollment goals, job performance, recruiting of students, and training. Documents responsive to these requests include the emails to and from Admissions Employees and other employees from January 1, 2002 to the present.

Defendants objected to the scope of these requests on various grounds, including burden, and argued that the requests would "require the production of 'untold millions' of documents and would 'make meaningful progress in resolving this case a virtual impossibility and would exert undue pressures that pervert the discovery process.'" R&R No. 2 at 39. Both the Special Master and the Court overruled Defendants' objections and ordered that documents responsive to the disputed requests be produced, including all responsive emails of Admissions Employees. *See generally* R&R No. 2; July 23, 2013 Order Overruling Objections to R&Rs. In so doing, the Special Master and the Court found that emails of Admissions Employees are central to the "argument that quality factors were little more than 'window dressing.'" R&R No. 2 at 40.

Despite the Court's ruling, and despite Defendants' statement to the Court that the requests would "require the production of 'untold millions' of documents" to the Plaintiffs, testimony provided by Defendants' designated Rule 30(b)(6) witness revealed, for the first time on December 19, 2013, that Defendants do **not** intend to produce the "untold millions" of Admissions Employees' emails they told the Court would be produced in this action. Instead, after first testifying such emails were **not** inaccessible, following verbal coaching from his counsel, EDMC's Rule 30(b)(6) witness stated that virtually all of the email that EDMC had represented to the Court would be produced was not "reasonably accessible" because it did not exist in an active email state, but instead existed on backup tapes. While Defendants' 30(b)(6) designee made general reference to the burdens of accessing this critical information, he admitted that he had never attempted to obtain information from backup tapes and did not offer any cost estimates associated with doing so.

According to Defendants' 30(b)(6) designee, Defendants first issued a litigation hold in connection with this case in June 2011, years after learning of the government's investigation. 30(b)(6) Rough Tr. at 13:7-9. Yet, since January 1, 2002, Admissions Employees' email accounts have been limited in size, generally to 250 megabytes. *Id.* at 92:3-18. Moreover, when Admissions Employees leave the employ of Defendants, unless they are at that time subject to a litigation hold, the employee's computer and email account are deleted. *Id.* at 117:4-20; 127:11-20. Defendants' designee also testified, however, that all emails since at least January 1, 2002 have been saved on tapes. *Id.* at 93:16-18; 95:18-20. Thus, the only source of any email of an employee not under a litigation hold who left EDMC between January 1, 2002 and December 31, 2012 are these tapes. *Id.* at 123:2-18. The same would be true for emails of employees that precede a litigation hold applicable to them.

It also appears, based on Defendants' designee's testimony, that many emails of current employees may also exist only in the backup tapes. For example, any emails that an employee

---

[2] As used herein, the term Admissions Employees shall have the definition ascribed in Plaintiffs' discovery requests and includes, among others, ADAs and their supervisors.

deleted in order to comply with the mailbox size limitations may not exist anywhere other than in the backup tapes. *Id.* at 118:19-25.[3]

Defendants have not made any efforts to access discoverable information on these tapes that is responsive to Plaintiffs' document requests, including the "untold millions" of emails Defendants represented to the Court they would need to produce if compelled to do so; nor did they take appropriate steps to retain email in an active state even though they knew they were under investigation years before they put in place litigation holds. Defendants have also not made any effort to ascertain the burdens and costs associated with accessing the critical information on these tapes.

Please provide information identifying all Admissions Employees whose email, either in whole or in part, exists only in backup tapes for any portion, or all, of the period of January 1, 2002 to December 31, 2012, and indicate in your written response the period for each such employee that their email exists only in backup tapes. Please confirm by Tuesday, January 21st whether you are willing to provide this information, and please provide this information no later than Monday, January 27th. Plaintiffs also request that Defendants indicate no later than Tuesday, January 21st whether they refuse to access and produce any of the critical information contained on this media. If we do not hear from you by then, we will assume that you do not intend to produce this critical information.

**2. Structured Databases.** In the course of the parties' meet and confers regarding structured databases, Defendants identified Lawson, CampusVue, and CARS as three structured databases that may contain relevant and responsive information. Defendants' test production included documents from these three databases. Despite multiple requests from Plaintiffs over the course of many months, Defendants revealed, for the first time on December 19, 2013, during the 30(b)(6) deposition, the existence of an additional two databases -- RACER, and ImageNow[4] -- that clearly contain responsive documents but that were not included in the test production.

Even more troubling than Defendants' failure to timely identify all databases containing responsive information is the revelation that Defendants have not, and do not intend to, run any independent searches or queries directly on at least four of these five databases in responding to the various discovery requests, despite the fact that information in ***all*** of these databases is admittedly relevant and responsive.[5] *See, e.g.,* 30(b)(6) Rough Tr. at 194:10-12 ("…the systems we talked about [*e.g.,* CampusVue, Lawson, CARS, ImageNow, and RACER] are the official

---

[3] Defendants' 30(b)(6) designee testified that current employees could store emails on their computers by creating .pst files, but that there is no policy requiring them to do so and that the employee could have instead chosen to delete the emails, making the tapes the only source for the emails. *See* 30(b)(6) Rough Tr. at 116:21-117:12; 127:9-25. Because Defendants erase the computers of all former employees who are not currently under a litigation hold, even had former employees created .pst files before leaving the employ of Defendants, the tapes would be the only likely source for that email.

[4] ImageNow was discussed at the deposition in the context of structured databases but was described by Mr. Miko as an "imaging system." 30(b)(6) Rough Tr. at 150:16-22.

[5] Defendants' 30(b)(6) designee provided conflicting testimony as to whether Defendants would search, review and produce documents from RACER.

systems of records and have all of that relevant information."); 178:5-25 (no collection from CampusVue other than the test production); 180:15-23 (no collection from CARS); 19:20-24 (no collection from LAWSON). Instead of searching these databases to respond to Plaintiffs' discovery requests, Defendants apparently intend merely to produce stale, unspecified reports only if they happen to be found in a custodian collection. This is obviously unacceptable and Defendants are required to search all five of these databases for all responsive information.

Plaintiffs request that Defendants conduct independent searches and queries in these five databases and systems and produce all information responsive to Plaintiffs' discovery requests. Please confirm by Tuesday, January 21st that you will do so. In addition, please provide by Monday, February 10th the field information for each of the databases that Defendants' 30(b)(6) designee indicated would be a straightforward task. *See, e.g.,* 30(b)(6) Rough Tr. at 157:23-158:3 (identifying the available fields in RACER would not be a difficult task); 179:6-12 (collecting standard reports from CampusVue is "relatively easy."); 181:6-9 (generating standard reports from CARS is "relatively easy").

**3. Document Retention Policy.**  Defendants' 30(b)(6) designee was unable to respond to various questions regarding general document retention policies at the schools and the corporate level, even though this was part of Plaintiffs' notice. Please confirm by Tuesday, January 21st that all retention policies for the time period in question for each Defendant have been produced. If they have not been produced, please let us know when they will be produced.

**4. Custodians.**  As indicated in Plaintiffs' letter dated December 19, 2013, the United States is prepared to make a bilateral exchange of custodian lists with Defendants. In that regard, we request that Defendants provide a list identifying, by name as well as position, all current and former employees of each individual Defendant who are included within Defendants' custodian list. The list should also identify relevant custodians who are being omitted from Defendants' searches and collection based on Defendants' failure to access information that Defendants claim is not reasonably accessible.

**5. Litigation Holds.**  Defendants' 30(b)(6) designee was unable to confirm whether all Admissions Employees who were employed at the time litigation hold notices were issued received the litigation hold notices issued in connection with this case. Plaintiffs request written confirmation that all Admissions Employees have in fact received the litigation hold notices. *See* July 22, 2013 Notice of Deposition of Defendants Pursuant to Federal Rule of Civil Procedure 30(B)(6), topic 1 (identifying litigation holds as a topic within the scope of the deposition). Please let us know whether any former Admissions Employees at the time the litigation hold notices were issued were sent litigation hold notices; please also let us know whether there was any attempt made to preserve the files of these former Admissions Employees for production in this case.

Finally, Defendants' designee was unable to answer the question when counsel representing EDMC first became aware of any investigation by the United States Department of Justice or the United States Attorneys Office for the Western District of Pennsylvania into whether EDMC was or was not in compliance with the Federal Incentive Compensation Ban. This is directly relevant to Defendants' obligations to preserve records and ensure that evidence

could be promptly produced in this action.  Please provide the answer to all of these questions no later than Monday, January 27th.

∗ ∗ ∗

We would appreciate hearing from you no later than close on business on Tuesday, January 21st regarding the issues raised in this letter.  Thank you for your prompt attention to these matters.

        Very truly yours,

        DAVID J. HICKTON
        United States Attorney


        /s/ Christy C. Wiegand
        CHRISTY CRISWELL WIEGAND
        Assistant U.S. Attorney
        (412) 894-7452