# EXHIBIT N



**U.S. Department of Justice**

*United States Attorney*
*Western District of Pennsylvania*

*U.S. Post Office & Courthouse*
*700 Grant Street*
*Suite 4000*
*Pittsburgh, Pennsylvania 15219*          *412/644-3500*

January 22, 2014

<u>VIA EMAIL</u>

Jeffrey J. Bresch, Esq.
Jones Day
500 Grant Street
Suite 4500
Pittsburgh, Pennsylvania 15219

    RE:    *United States of America, et al. v. Education Management Corporation, et al.*,
             **Civil Action No. 07-461**
             <u>**Re: Defendants' December 31, 2013 Document Production**</u>

Dear Jeff:

    We write with respect to Defendants' December 31, 2013 production and, more generally, the current state of Defendants' overall document production in this case, which is fundamentally inadequate, in clear violation of this Court's December 10, 2013 Order, and seemingly designed to impede the orderly progression of discovery.

    As a general matter, Defendants' document production is deficient. To date, Defendants acknowledge having produced documents from just 30[1] of the more than 11,000 admissions personnel that they concede are covered by this case.[2] In light of this, it is apparent that the vast

---

[1] Pursuant to Defendants' December 31, 2013 production cover letter (the "Cover Letter"), to date Defendants have produced documents from: (i) "18 ADAs" (Robert Baker, Pamela Bright, Jaymie Estrada, Leah Floyd, Sharon Gann, Anne Guerrero, Nisa Kara, Quyvan Le, Traneice Mills, Daniel Mott, Audrey Panu, Jennifer Prine, Peggy Rhymer, Elizabeth Slamka, Kathlene Tucker, Kim Wilderman, Maurice Wilson and Kasey Zittle); (ii) ESI from 12 "admissions employees" (Vijay Shah, Lee Colker, Lynn Washington, Lynn Kossick, Ken Boutelle, Walid Kaakoush, Jan Anton, Jeff Abraham, Brian Summy, Jamie Wellnitz-Yaghoubi, Sam Yaghoubi, and Sean St. Clair; and (iii) documents from the assistant to Vijay Shah. It does not appear that Defendants have produced all documents called for from each of these custodians -- namely documents from January 1, 2002 through December 31, 2012 responsive to all of Plaintiffs' document requests that Defendants have agreed to produce or been compelled to produce. If Defendants have not produced all responsive documents for these custodians, please clarify why Defendants have not conducted a search for and/or produced all documents covered by the full period of discovery.

[2] *See* Defendants' April 18, 2013 Omnibus Opposition to Plaintiffs' Motion to Compel at 13-14.

majority of emails among and between admissions personnel for the more than 100 Defendants in this action have *not* been produced -- in direct contradiction to the Court's Order requiring Defendants to produce by December 31, 2013 all admissions personnel email "currently available to" Defendants.  (R&R No. 4 at 11.)  In addition, the Cover Letter makes clear that the hard copy documents that Defendants were required to produce on the subject matters delineated by Court Order were produced from only four of the more than 100 Defendants.  Indeed, it is apparent that EDMC has produced files from an infinitesimally small fraction of even the purported 4500 custodians who were placed under a litigation hold years after EDMC was aware of the government's investigation.[3]  (*See* Rough Dep. Tr. of M. Miko at 282:14-18.)

In short, the general state of Defendants' document production in this case is abysmal.  No matter how many "pages" of documents have been produced -- many of which appear to have been from a pre-packaged set of documents Defendants intended to use as their entire production when Judge McVerry and Judge Levie denied Defendants' attempt to only produce the "window dressing" of their fraud -- the real story is told by Defendants' utter failure to produce the documents across the breadth of requests and the breadth of custodians that are relevant to this case, *and that they were under Court order to produce by December 31st*.[4]  This is unacceptable and it threatens to impede the orderly progress of discovery and preparation for depositions.  It is time that Defendants do what they are required to do.

We now turn to the considerable deficiencies in Defendants' December 31, 2013 production, which disregarded the express words and spirit underlying Judge Levie's Report and Recommendation No. 4 ("R&R No. 4").

As you are no doubt aware, one of the primary aims of R&R No. 4 was "prioritizing the production of certain materials [to] advance the goal of 'streamlining' envisioned by the Court."  (R&R No. 4 at 10.)  To this end, prior to the entry of R&R No. 4, Plaintiffs identified four categories of documents for Defendants to prioritize the production of: (1) "admissions employee emails;" (2) "investor communications related to the Incentive Compensation Ban;" (3) "materials relied upon to confirm the attestations in the Program Participation Agreements ('PPAs') and Defendants' compliance with the PPAs;" and (4) "documents relating to Defendants' Compensation Review Task Force."  (Plaintiffs' Nov. 15, 2013 submission, at 15.)  In R&R No. 4, the Special Master recommended, and the Court subsequently ordered, that Defendants produce by December 31, 2013 "***all material currently available to them***" regarding these four categories of documents.  (R&R No. 4 at 11; 12/10/13 Order [Dkt No. 319].)

---

[3] Indeed, Defendants' entire production to date is sourced from only 299 custodians or 6% of the 4,500 or so EDMC employees who received litigation holds.  But even that miniscule number is misleading insofar as, of the 299 custodians for whom EDMC has produced documents, only 44 (1%) have produced so much as 1,000 responsive documents and only 79 (1.8 %) have produced so much as 100 documents.  In fact, 80 of the custodians produced *five* or fewer documents.  This sampling that Defendants have performed is plainly unacceptable.

[4] We sent you a separate letter on January 16, 2014 concerning your surprising recent assertion on December 19, 2013 that critical evidence your clients possess is purportedly inaccessible.  We will need to deal with that issue immediately as well.

It is apparent from the Cover Letter, and confirmed by a first level review of the documents comprising Defendants' December 31st production, that Defendants have ignored the Court's Order by failing to prioritize the production of these four categories of documents in any meaningful way. Defendants' December 31st production represents a tiny fraction of the documents responsive to the four prioritization categories, which Defendants unsuccessfully attempt to mask by citing to documents *included in prior productions*. Indeed, after representing to the Special Master and Judge Levie that "untold millions" of documents and emails would be produced during the motion to compel stage of the case if the motions were granted (and they were granted), Defendants' most recent production included electronic mail from the hard drives of just 18 additional admissions personnel (as compared to the 11,000 covered by this case). Of these 18 additional admission personnel, the actual email produced from them is predominantly from the 2011 period forward.

It is impossible for Plaintiffs to believe that the hard drives or systems containing emails of only 18 admissions personnel were the totality of remaining admissions personnel email "currently available" to Defendants to produce on December 31, 2013. Likewise, it strains credulity to believe that the limited materials produced from the pre-2011 time period constitute the entirety of pre-2011 electronic mail from admissions personnel that was "currently available" to Defendants on December 31, 2013.

As Exhibit B to Defendants' December 31, 2013 letter makes clear, Defendants have failed to produce the vast majority of documents responsive to the four prioritization categories. Specifically:

- For Category 1, "admission employee emails," as addressed above, Defendants have merely provided the hard drives of 18 specific ADAs[5], hard copy documents from only four of the 100 plus EDMC Defendants, and referenced the documents of 12 other "admissions employees" that had been previously produced. This represents documents from less than 0.3% of the more than eleven-thousand admission personnel you noted would have documents and emails. In light of Defendants' refusal to produce close to a decade of admission employee emails in this action, *revealed for the first time at EDMC's 30(b)(6) deposition on December 19, 2013*, the only reasonable conclusion that can be reached from all the relevant facts is that Defendants simply decided to ignore the Court's Order. (*See* January 16th Letter from Christy Wiegand to Laura Ellsworth.) Please let us know the state of this production from Defendants no later than January 31, 2014.

---

[5] As Defendants' 30(b)(6) witness acknowledged, production of an ADA's hard drive is by no means analogous to production of all responsive emails. More specifically, Defendants' 30(b)(6) witness testified that ADAs primarily maintained their email in four places: (i) in their mailbox, subject to a space limitation of 250 megabytes; (ii) on the companies' server, subject to a much larger space limitation than the individual mailbox; (iii) on "file shares;" or (iv) on the ADA's hard drive. (*See* Rough Dep. Tr. of M. Miko at 92:23-93:9.) As such, Defendants' production of the ADAs' hard drive is just one of several locations that Defendants would expect to find responsive emails.




- For Category 2, "investor communications related to the Incentive Communication Ban," Defendants produced Board Agendas, Transcripts of Earnings Conference Calls, and ESI documents from only one custodian, notwithstanding the fact that responsive documents would be expected to be found in the possession of many EDMC personnel, given the significant private and institutional ownership of the company.[6]  Please produce promptly all communications with Goldman Sachs, Provident Equity, and Leeds Equity, all of whom have resisted third party discovery in this action on the basis that EDMC should first provide documents in its possession, custody, and control concerning them before they are required to do so.  If no such documents exist, please provide that attestation in writing so that the investors understand we will need to obtain from them the information you have not produced.  Please let us know the state of this production from Defendants no later than January 31, 2014.

- For Category 3, "materials relied upon to confirm the attestations in the Program Participation Agreements ('PPAs') and Defendants' compliance with the PPAs," notwithstanding the fact that there were literally hundreds of PPAs executed across all of the EDMC institutions over the time period in question, Defendants have produced documents from just *three* new custodians, produced documents that appear to have

---

[6] This topic is also the subject of Plaintiffs' January 15, 2014 Motion to Compel Responses to Plaintiffs' Second Set of RFPs.  Defendants have wholly refused to respond to requests for information related to EDMC Investors' involvement in the management of Defendants' operations, including their discussions with Defendants' management and Board of Directors.  Defs.' Initial Responses to Plaintiffs' Second Set of RFPs at 10.  Moreover, Defendants have improperly limited their response to requests for materials regarding EDMC Investors' attendance at meetings with Defendants' Officers or Board of Directors and Defendants' preparation for and presentation of earnings calls to the extent the information and materials are related to: (1) EDMC Investors' attendance at Board of Directors' meetings or (2) Defendants' earnings calls, if those materials post-date January 1, 2006 *and* they relate to Defendants' compliance with the specific statutory or regulatory requirements of the Higher Education Act, including Defendants' "admissions-related compensations practices."  Defs.' Amended Responses to Plaintiffs' Second Set of RFPs, at 4-5.

4

originated at one time from EDMC's RACER database[7], and referenced the "sampling" of documents that had been previously produced and were fundamentally inadequate. Indeed, Plaintiffs find it particularly curious that Defendants have produced documents from only three additional custodians given Defendants' claims of burden and their contentions that they undertook a reasonable inquiry to respond to the RFAs dealing with this very same topic. Certainly it cannot be EDMC's position that collecting documents from only three additional custodians constitutes a reasonable inquiry or that EDMC only asked three individuals about the matters covered by the RFAs. Defendants must produce all such documents promptly. Please let us know the state of this production no later than January 31, 2014.

- For Category 4, "documents relating to Defendants' Compensation Review Task Force," Defendants produced just 1,000 pages of material "pertaining to the Compensation Task Force" and, in an attempt to disguise the inadequacy of this production, again reference documents that had been previously produced. Defendants must produce all such documents promptly. Please let us know the state of this production no later than January 31, 2014.

In sum, Defendants have failed to produce "*all material currently available to them*" regarding the four prioritization categories. Unless Defendants commit no later than January 31st to produce all such material required by the Order no later than February 28th, Plaintiffs will have no choice but to seek to enforce Judge McVerry's Order forthwith, and take appropriate action to remedy Defendants' failure to abide by the Order.

Very truly yours,

DAVID J. HICKTON
United States Attorney


/s/ Christy C. Wiegand
CHRISTY CRISWELL WIEGAND
Assistant U.S. Attorney
(412) 894-7452

---

[7] We have written separately with respect to the testimony of EDMC's December 19, 2013 30(b)(6) witness, who testified that EDMC was not directly querying four out of five of its relevant structured databases in response to Plaintiffs' document requests. Based on this testimony, we can only assume that the scant RACER database material in your production simply represents stale, anecdotal reports that happen to be found in a custodian's file.