# EXHIBIT T

# JONES DAY

500 GRANT STREET, SUITE 4500 • PITTSBURGH, PENNSYLVANIA 15219.2514

TELEPHONE: +1.412.391.3939 • FACSIMILE: +1.412.394.7959

Direct Number: (412) 394-7929
leellsworth@jonesday.com

JP008936/1280823v3
149637-635001

March 3, 2014

**VIA EMAIL & OVERNIGHT, HAND DELIVERY**

The Honorable Richard A. Levie (Ret.)

rlevie@jamsadr.com

      Re:   *U.S. ex rel. Washington et al. v. Education Management Corporation et al.*, Civil Action No. 2:07-461-TFM (W.D. Pa.); **Defendants' Opposition to Plaintiffs' Motion to Enforce Report & Recommendation No 4.**

Dear Judge Levie:

## INTRODUCTION

      On February 24, 2014, Plaintiffs filed what they styled a "Motion to Enforce Report & Recommendation No. 4, which was Adopted in Full by the Court." Plaintiffs contend defendants EDMC and its affiliates somehow violated the recommendation and order when on December 31, 2013, Defendants supplemented their earlier 6.6 million-page document productions with 2.8 million pages more. Plaintiffs' motion is premised on an incorrect and unreasonable interpretation of the words of both the recommendation and the order adopting it.

      By Order dated December 10, 2013, Judge McVerry adopted without modification a provision of R&R No. 4 that required the *government* to produce by year's end "all relevant, responsive material that was in [its] possession as of November 18, 2013," but only called for *EDMC* to produce within that same time period "all material currently available to [it]" from four categories of information. [Doc. 319]. In response, EDMC reviewed materials it had collected as of December 10, identified which of that material fit into the four categories and could practically be produced by December 31, and pushed that prioritized material to the front of the queue for the December 31 production. The government's motion ignores the distinctions between the language used to describe what the respective parties were to produce before the year ended (and, it merits noting, the government's own compliance shortcomings). The government then interprets the Order to have required EDMC to have collected, reviewed and produced *all* documents responsive to the four categories from *all* of EDMC's more than one hundred locations within the 21 days between the date of the Order and December 31. In effect, the government's interpretation is an attempt to accelerate, in material part, the April 30, 2014 deadline for the production of documents in this case to December 2013. The government failed twice before to build such an unreasonably shortened discovery period into the case management

Hon. Richard A. Levie (Ret.)                                                                    JONES DAY
February 27, 2014
Page 2

order.  No reasonable reading of R&R No. 4 could suggest that it was intended to amend the ordered schedule in such a way, and Plaintiffs' motion to enforce should be denied.

## ARGUMENT

R&R No. 4 was precipitated in large measure by EDMC's concerns that as of November 2013 the government had failed to engage in significant document discovery.  In comparison to the 6.6 million pages of documents that EDMC had produced by late November, for example, Plaintiffs had collectively produced less than 65,000 pages, consisting largely of publicly available documents or documents that EDMC produced during prior investigations.  *See* R&R No. 4 at 7 [Doc. 314].  EDMC believed it was appropriate at that time to discuss with Your Honor and Plaintiffs how best to prompt meaningful rolling productions from the government on an appropriate timetable.  *See* November 15, 2013 Letter from L. Ellsworth to Hon. R. Levie (Ret.) at 3 (attached as Ex. 1).  In addition, EDMC asked Your Honor to recommend that Plaintiffs be compelled to prioritize the collection of eight categories of documents initially identified by EDMC in October 2013.  *Id.* at 5.  The government agreed to prioritize four of the categories; however, its offer was contingent on EDMC agreeing to prioritize for production four categories of documents, which the United States identified for the *first* time during a November 7 meet and confer session.  *Id.*

In analyzing EDMC's request to formulate a protocol to ensure that Plaintiffs were appropriately advancing their discovery obligations, Your Honor noted in R&R No. 4 that "[s]everal aspects of Plaintiffs' discovery efforts . . . do raise serious questions," and that it was "difficult not to conclude, at this juncture, that there is most likely at least some merit to Defendants' assertion that Plaintiffs' productions to date have contained little material useful to Defendants."  R&R No. 4 at 9 [Doc. 314].  Plaintiffs' continuous representation that they will complete rolling production by the end of the document discovery period did "little to allay concerns about avoiding back-loading and undermining the purpose and intent of early depositions."  *Id*. at n.5.

Your Honor acknowledged that document collection may be a laborious and time intensive process.  Plaintiffs, however, had failed to explain why they had been prevented from "producing other materials that they presumably already have (and have had for some time) in their possession," such as material from their pre-intervention investigations or materials the Relators provided to the United States during the investigative stage—material EDMC had identified for prioritized production.  R&R No. 4 at 9-10.  Your Honor concluded that prioritizing the production of certain materials would "advance the goal of 'streamlining' envisioned by the Court, particularly because many of the materials listed in Defendants' prioritization requests are directly related to requests for production as to which the Court has compelled production."  *Id.* at 10 (citation omitted).

No concerns about the quality of EDMC's document collection or production efforts or activities are articulated in R&R No. 4.

**JONES DAY**

> On December 10, 2013, adopting Your Honor's language in R&R No. 4, Judge McVerry:
>
> > Ordered that Plaintiffs shall produce, by December 31, all relevant, responsive material that was *in their possession* as of November 18, 2013; and…
> >
> > Further Ordered that Defendants shall produce, by December 31, 2013, all material *currently available to them* regarding: (1) admissions employee emails; (2) investor communications related to the ICB; (3) materials relied upon with regard to the Program Participation Agreements and Defendants' compliance therewith; and (4) materials related to Defendants' Compensation Review Task Force….

Order Adopting R&R No. 4 at 1 [Doc. 319] (emphasis added).

## I. Plaintiffs' Interpretation of "Currently Available" is Incorrect and Unreasonable.

The government contends that R&R No. 4 "on its face" required Defendants to "search for and produce all of their responsive non-privileged documents" relating to the four specified categories. *See* Feb. 24, 2014 Letter from C. Wiegand to Hon. R. Levie (Ret.) at 2 ("Motion to Enforce"). Under Plaintiffs' reading of R&R No. 4, Defendants were required between December 10 and December 31 to "affirmatively collect from their various institutions and review and produce" all material regarding the four categories of documents. *Id.* at 3. But the government's interpretation ignores both the context from which R&R No. 4 arose and the practicalities of document production in this case, well known to all. It fails, as well, to ascribe any meaning to the phrase "currently available to them," which is expressly used in both R&R No. 4 and the Order, and used in contradistinction to the phrase used to instruct the government produce "all relevant responsive material that was in their possession as of November 18, 2013."

As previously established in this case, EDMC employs thousands of people in over one hundred locations. It is wholly unreasonable to suggest that the Court's Order required EDMC to collect within 21 days all documents potentially responsive to the enumerated categories from custodians across the country. Nothing in R&R No. 4 suggests that such a result was intended or that Defendants' conduct in discovery to date warranted imposition of such an extreme deadline.

Moreover, even if collection of all responsive documents from all potential custodians were possible within 21 days—which it was not—it would be unreasonable to expect that the documents, consisting largely of ESI, could be processed (including being subjected to the over 9000 search variations required by the government), reviewed, and readied for production within

such a short timeframe.[1]  Nothing in R&R No. 4 suggests that EDMC's right to review its documents for responsiveness and privilege before production was to be abrogated.

Had R&R No. 4 meant to recommend and had Judge McVerry meant to order the production of "all relevant, responsive material that was in [EDMC's] possession," R&R No. 4 and the Order would have used the language they used to direct *Plaintiffs,* and *not EDMC*, to produce relevant material on or before December 31.  Notably in response to an Order that EDMC produce that which is "currently available," EDMC produced more than 2.8 million pages in the span of less than a month.  While ordered to produce "all relevant, responsive material that was in their possession as of November 18, 2013," the government produced fewer than 170,000 pages.  And, despite the Order's command that the government produce "all relevant, responsive material" by December 31, the government has taken the position that it can comply by producing such material on a "rolling basis."  *See* Jan. 27, 2014 Letter from C. Wiegand to L. Ellsworth at 3 (attached as Ex. 2).  That the government now argues the EDMC cannot do the same—when EDMC was only directed to produce that which was "currently available"—is unreasonable (charitably put).[2]

## II.  EDMC's December 31 Document Production Complied Fully With the December 10 Order.

In response to the Order, EDMC staged all material available to it at that time that fit within the four categories and that could practicably be processed and reviewed for production on December 31, 2013.[3]  In addition, EDMC has assured Plaintiffs that to the extent it identified documents related to the priority requests that were not "currently available" for production on December 31, it would make reasonable and appropriate efforts to continue prioritizing that information going forward.  *See* January 31, 2014 Letter from J. Bresch to C. Wiegand at 3 (attached as Ex. 3).

### A.  Admissions Employee Emails

Plaintiffs deride EDMC's production of hard drives from "only" 18 ADAs on December 31 as "particularly jarring" in light of Defendants' representations that requiring them to produce

---

[1]  Your Honor has noted that he is "[m]indful of the limited resources available to both parties" in this litigation.  R&R No. 4 at 12 [Doc. 314].

[2]  The government's failure to comply with this same recommendation and Order is not modest and has been the subject of meet-and-confer exchanges between the parties.  EDMC, however, courteously though without obligation, has awaited supplementation from the government before precipitously filing a motion to compel compliance.  Supplementation did not arrive from the government until February 23, 2014, the day after the government filed the instant motion.  EDMC is assessing that supplementation now.

[3]  In addition to material responsive to the four categories, EDMC also produced on December 31, 2013, significant volumes of data responsive to other of Plaintiffs' more than 150 document requests outstanding at that time, including documents relating to such key issues in the case as ADA salaries, evaluations and training.  *See* December 31, 2013 Letter from J. Bresch to C. Wiegand at Exhibit A (attached as Ex. 4).

Admission Employee emails would require the production of "untold millions of documents" because they have employed over 11,000 recruiters since 2003. *See* Motion to Enforce at 7 (citations omitted).[4] Plaintiffs' suggestion that responsive ESI does or should exist for those 11,000 EDMC admissions employees mischaracterizes EDMC's representations in this regard. As the government knows from the testimony of EDMC's 30(b)(6) designee and otherwise, many of those custodians are no longer in EDMC's employ and much of this ESI no longer exists, in part because of the government's inexplicable four-year delay in surfacing the specific nature and scope of this lawsuit.[5]

Moreover, from the outset, EDMC, in decided contrast to the government, has focused on collecting and producing ESI, including emails, from those custodians likely to have material most relevant to the key issue in this case—the ADA compensation plan. By the end of November—six weeks after document discovery had begun—EDMC had already produced to the government ESI from senior level Admissions Department employees who likely would have been involved in any "top down conspiracy" as alleged by the government, if such a conspiracy existed. Included among those custodians were, Jeff Abraham, EDMC's former VP Marketing Operations, Vijay Shah, EDMC's former Sr. VP Admissions and Marketing, Ken Boutelle and Walid Kaakoush, OHE's former VPs Admissions, and Lynn Kossick, EDMC's Manager, Admissions Performance and Compensation, and the individual responsible for preparing ADA Salary Worksheets, all of whom were identified in Plaintiffs' Joint Complaint in Intervention, Defendants' Initial Disclosures or both. *See* December 31, 2013 Letter from J. Bresch to C. Wiegand at Exhibit B at 1 (attached as Ex. 4). Defendants' productions before December 31 also included ESI from additional recruiters and admissions managers. EDMC directed Plaintiffs to its prior productions for information responsive to its request for Admissions Employees' emails. *Id.*

Though burdensome in the extreme, EDMC's collection and processing of Admissions Employees' emails is ongoing and EDMC anticipates additional rolling production of same on or before March 31, 2014.

---

[4] Notably, ESI, including emails, from these 18 ADA custodians generated almost 1.9 million pages. *See* Exhibit 4 at Exhibit A, p. 4.

[5] Plaintiffs contend that EDMC was required to begin retaining ESI as early as 2007 based on vague and non-specific information regarding Relator Mahoney's intent to "consider[ ] the possibility of pursuing related whistleblower reports to the appropriate education funding agencies" and an alleged awareness on the part of one of EDMC's outside lawyers of a government investigation into EDMC. *See* Plaintiffs' Motion to Compel the Production of Documents from Defendants' Backup Tapes set forth in February 24, 2014 Letter from C. Wiegand to Hon. R. Levie (Ret.) at 19-21. EDMC will respond fully to Plaintiffs' baseless contentions in this regard in its opposition to that motion.

B.    Investor Communications Related to the ICB

The government similarly takes issue with EDMC's December 31 production of materials related to investor communications. Notably, the first EDMC learned of the government's interest in prioritizing this category of information was at the November 7, 2014 meet and confer session.[6] In response to the December 10 Order, EDMC processed and reviewed the ESI of the EDMC employee most responsible for investor communications, John Iannone, AVP and Director of Investor Relations. EDMC ran the appropriate searches against Mr. Iannone's data, reviewed the documents and produced responsive, non-privileged communications with EDMC Investors concerning the ICB on December 31. In addition, EDMC produced agendas from Board of Directors meetings and transcripts of earnings conference calls. *See* December 31, 2013 Letter from J. Bresch to C. Wiegand at Exhibit B at 1 (attached as Ex. 4). EDMC supplemented its production of materials responsive to this category on February 20, 2014 with ESI from numerous custodians, including EDMC's former CEOs and Chairmen, Todd Nelson and John McKernan. *See* February 20, 2014 Letter from J. Bresch to C. Wiegand at Exhibit A at 2 (attached as Ex. 5). EDMC ran the appropriate searches against Messrs. Nelson and McKernan's data, reviewed and produced the responsive, non-privileged documents identified. The government's baseless recriminations that EDMC is intentionally withholding a cache of "communications containing the true give and take between Defendants and their investors" notwithstanding (Motion to Enforce at 10), EDMC continues to search for non-privileged documents responsive to this prioritized category and will produce them if and when they become available.

C.    Materials Relied Upon with Regard to the Program Participation Agreements

Plaintiffs contend the number of PPA signatories whose data has been produced compared to the total number of signatories is insufficient. Motion to Enforce at 12. Again R &R No. 4 required EDMC to produce on December 31 only that material which was "currently available." The majority of those who signed PPAs on behalf of EDMC schools, however, are no longer employed by the company. For the reasons stated above, ESI was not maintained for many of those individuals. EDMC produced relevant ESI from those PPA signatories whose data was available and could be practicably reviewed and readied for production on December 31. *See* December 31, 2013 Letter from J. Bresch to C. Wiegand at Exhibit B at 2-3 (attached as Ex. 4).

Plaintiffs fail to mention in their motion that among the custodians whose data EDMC produced on December 31 in response to this category were the two corporate level EDMC employees who were significantly involved in facilitating the process for the signing of federal

---

[6] The JCII, for example, contains no allegations relating to any influence exercised by EDMC's investors on the schools' recruiting practices. The testimony from Mr. Mahoney regarding this topic referred to by the government in its Motion to Enforce at page 9 occurred in connection with his deposition in this case taken on January 17, 2014—more than 2 weeks after the December 31 production.

PPAs for all EDMC schools, Richard Them, SVP Student Financial Services and his assistant, Lia Miller. *Id.* at 2.

Plaintiffs suggest that EDMC has withheld information regarding internal and external audits of Defendants related to both their ICB compliance and compliance with other regulatory requirements. Again, Plaintiffs' argument ignores the actual content of Defendants' productions. On October 15, 2013, for example, Defendants produced over 7,900 pages of compliance audit documents. *See* October 15, 2013 Letter from J. Bresch to C. Wiegand at Exhibit A at 3 (attached as Ex. 6). EDMC's December 31 production included over 900,000 pages of accreditation documents. *See* Exhibit 4 at Exhibit B at 2. On December 31, Defendants further provided a non-exhaustive list of documents produced prior to that date that were examples of documents relating to internal controls, training, and processes put into place to ensure compliance with the ICB and other regulations. The letter accompanying EDMC's December 31 production explained that these materials were representative of materials that were or may have been relied upon in connection with the execution of the PPAs. *Id.*

### D. Compensation Review Task Force Materials

Plaintiffs complain that Defendants have made no effort to explain why they have denied Plaintiffs "important information" regarding the Compensation Review Task Force. Plaintiffs' assertion is premised on the notion that there must currently exist a large number of documents related to the activities of that Task Force that has not yet been produced. That is not the case. From documents that EDMC has collected and produced related to the Task Force, it appears that the work of the Task Force was accomplished over approximately a six to eight month period between late 2002 and early 2003. The documents suggest the Task Force communicated most frequently by phone. Prior to December 31, EDMC produced ESI from five of the Task Force's 13 members. Nevertheless, Defendants ran appropriate searches against these custodian's data and any non-privileged documents related to the Task Force were produced. Again, because it wasn't until over seven years after the Task Force completed its work that Defendants had notice of this action, the ESI for four of the members is unavailable. The government received on December 31 that which was currently available regarding this Task Force.

### **CONCLUSION**

Neither the plain language of the Court's directives, nor the context out of which they arose support an interpretation of "currently available" that required EDMC to collect, review and produce all documents responsive to the four prioritized categories from all of EDMC's more than 100 locations by December 31, 2013. Defendants' December 31, 2013 document production was more than fully compliant with the Court's Order. Plaintiffs' Motion to Enforce should be denied.

Hon. Richard A. Levie (Ret.)
February 27, 2014
Page 8

**JONES DAY**

                                            Sincerely,

                                            /s/ *Laura E. Ellsworth*
                                            Laura E. Ellsworth

Encl.

cc: Christy C. Wiegand, Esq.
    *(by email only)*